In the Matter of the Final Accounting of JAMES P KERNOCHAN, et al., Executors, etc.

The will of M. gave to his executors certain portions of his estate in trust "to receive the rents, interest and income," and to apply the net amounts thereof to the use of the testator's widow during her life, remainder to beneficiaries named. The testator died during the night of April 20, 1881. The trust fund included certain shares of stock of the P. R. R. Co. On April 14, 1881, a dividend of $25,000 was declared on this stock, "payable May 2, 1881." On final accounting the executors charged themselves with this sum, treating the dividend as principal. *Held*, no error; that as soon as the dividend was declared the owner of the shares was entitled to it, and it became part of his estate ; also the fact that it was made payable at a future time was immaterial; and that the dividends to which the life tenant was entitled as income were onlythose declared after the testator's death.

*Cogswell* v. *Cogswell* (2 Edw. Ch. 231), distinguished.

On the same principle, *held*, that the widow was entitled to the whole of an extra dividend, declared after such death, although made from net earnings accumulated before that time ; that, whenever earned, they were not profits until so declared.

Prior to the death of the testator the P. R. R. Co. had accumulated a fund from earnings which was set aside as a sinking fund to pay outstanding obligations. Certain of the stockholders, including the executors, entered into an agreement with another company for

a sale of their stock to the company at $250 per share, the company to have the sinking fund, and to pay said shareholders a ratable portion thereof, which was equivalent to $15.74 per share. In the account this was included as part of the price received and credited as principal. *Held*, no error ; as it was received, not as a dividend, but as part of the price for which the stock was sold, and so belonged to the remaindermen.

The executors classed as income the value of certain options or privileges given to stockholders by various companies to subscribe for and take at par certain stocks and bonds. *Held*, error ; that as the right accrued only on condition the estate chose to purchase or pay for the bonds or stocks, if the options were accepted the purchases operated to increase the capital or change its manner of investment, and so the value of the options did not belong to the life tenant.

The testator had in his hands for investment and reinvestment certain moneys belonging to his wife, which he mingled with his own funds. *Held* (Earl, J., dissenting), that the estate was properly charged with compound interest thereon.

By the will Mrs. M. was appointed executrix ; she duly qualified and acted as such. The will contained a direction that each executor and trustee, other than his wife, "do receive and take the full rate of commissions provided by law for each executor ;" substantially the whole income of the estate was given to her. *Held*, that she was not entitled to commissions as it was the intention of the testator to exclude her from compensation.

(Argued November 30, 1886 ; decided March 8, 1887.)

Cross-appeals from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made January 18, 1886, which affirmed a decree of the surrogate of the county of New York on final accounting of the executors of the will of John R. Marshall, deceased.

The facts, so far as material to the questions discussed, are stated in the opinion.

*M. W. Divine* for executor, appellant. Cash dividends declared during a life tenancy from accumulated earnings, or profits, belong to the life tenant, whether such dividends be large or small. ( *Woodruff's Estate*, 1 Tucker, 58 ; *Clarkson* v. *Clarkson*, 18 Barb. 646 ; *Simpson* v. *Moore*, 30 id. 637 ; *Goldsmith* v. *Swift*, 25 Hun, 201 ; *Riggs* v. *Cragg*, 26 id. 103 ; *S. C.*, 89 N. Y. 487 , *Hyatt* v. *Allen*, 56 id. 553 ; *Jones* v.

*T. H., etc., R. R. Co.*, 57 id. 186 ; *Clapp* v. *Astor*, 2 Edw. Ch. 240 ; *Cogswell* v. *Cogswell*, 2 Ed. Ch. 231, 240, *Scovel* v. *Rosevelt*, 5 Redf. 121 ; *Sproule* v. *Bouche*, L. R. 29 [Ch. Div ] 653 ; *Barclay* v. *Wainwright*, 14 Ves. 67 ; *Price* v. *Anderson*, 15 Simons, 473 ; *Preston* v. *Melville*, 16 id. 163 ; *Bates* v. *McKinley*, 31 Beav. 280 ; *Olive* v. *Clive*, Kay 600 , *Johnson* v. *Johnson*, 15 Jur. 714 ; *Murray* v. *Glasse*, 17 id. 816 ; *Phimbe* v. *Nield*, 6 id. [N. S.] 529 ; *Ware* v. *McCandish*, 10, Leigh. 595 ; *Read* v. *Head*, 6 Allen, 174 ; *McClaren* v. *Stainton*, 3 DeG. F. & J. 202 ; *Brander* v. *Brander*, 4 Ves. 800 ; *Paris* v. *Paris*, 10 id. 184 ; *Witts* v. *Steere*, 13 id. 363 ; 2 Perry on Trusts [3d ed.] § 544 ; *Minot* v. *Paine*, 99 Mass. 108 ; *Daland* v. *Williams*, 101 id. 573 , *Leland* v. *Hayden*, 102 id. 550 ; *Read* v. *Head*, 6 Allen, 174 ; *Heard* v. *Eldridge*, 109 Mass. 258 ; *Gifford* v. *Thompson*, 125 id. 478 ; *Wiltbaugh's Appeal*, 64 Pa. St. 256 ; *Earp's Appeal*, 28 id. 368 ; *Van Doren* v. *Olden*, 19 N. J. Eq. 176 ; *Lord* v. *Brooks*, 52 N. H. 72 ; *Pierce* v. *Burroughs*, 58 id. 302 ; *In re Brown*, 14 R. I. 371 ; *Phelps* v. *F. & M. Bk.*, 26 Conn. 272 ; *Vail* v. *Vail*, 49 id. 52 ; *Brimley* v. *Grou*, 50 id. 75.) Until declared as a dividend profits belong to the corporation, and when a distribution is made it must be among those who, at the time of the distribution, are owners of the stock. (*Jones* v. *T. H.*, *etc.*, *R. R. Co.*, 57 N. Y 196 ; *Brundage* v. *Brundage*, 65 Barb. 397 ; *Granger* v. *Bassett*, 98 Mass. 462 ; Perry on Trustees, 87, § 545 ; *Hyatt* v. *Allen*, 56 N. Y. 558.) The stock options, or dividends, were properly classed as income. (*Clarkson* v. *Clarkson*, 18 Barb. 646 ; *Simpson* v. *Moore*, 30 id. 637 ; *Riggs* v. *Cragg*, 26 Hun, 102 ; *Wiltbaugh's Appeal*, 64 Pa. 256 ; *Atkins* v *Albree*, 12 Allen, 359 ; *Gray* v. *Portland Bk.*, 3 Mass. 364 ; *Minot* v. *Paine*, 99 Mass. 101 ; 11 C. E. Green, 11 ; 29 N. J. E. 625.) The sinking fund dividend of $15.74 2-7 per share should have been carried to the credit of income account. (*Bates* v *McKinley*, *supra* ; Hopkin's Trusts, *supra*.) The life tenant's legal interest in the income of the estate commenced immediately on the death of the testator. (*Cogswell* v. *Cogswell*, 2

Ed. Ch. 231; *Clive* v. *Clive*, Kay, 600; *Woodruff's Estate*, 1 Tucker, 59; *Riggs* v. *Cragg*, 26 Hun, 88–102; *Bates* v. *McKinley*, 31 Beav. 280; *In re Hopkin's Trusts*, L. R. 18 [Eq. Cas.] 696.) The letter, written under the direction of the testator, was competent evidence as to the terms upon which he held his wife's property. (1 Phillips on Ev., 402, chap. 8, § 10.) The allowance to the executrix of commissions was proper. (Code Civ. Pro., § 2736; *Betts* v. *Betts*, 4 Abb. N. C. 437; *In re Vanness*, 1 Tucker, 130; *Eager* v. *Roberts*, 2 Redf. 247; *In re Pike*, id. 255.)

*J. Frederic Kernochan* for executors accounting, respondents. Until a dividend is declared the earnings pass with the transfer of the stock as a portion of the capital of the company. (*Boardman* v. *L. S. & M. S. R. Co.*, 84 N. Y. 177.) When a dividend is declared the amount represented by the dividend becomes entirely several from the stock, and will not pass to a purchaser of the stock even though it is not payable until a subsequent date. (*Hyatt* v. *Allen*, 56 N. Y. 553; *Hill* v. *Newichawanic Co.*, 8 Hun, 459; 71 N. Y. 593.) When the property which is passed into a dual ownership is a certificate of stock the *corpus* to be preserved for the remainderman is that aliquot proportion of the whole corporate property which is represented by the ratio which the number of shares included in the certificate bears to the whole number of shares of stock in the corporation and "the corporate property" is not only the original "plant" of the company, but also the earnings then undivided, whether they be in cash or in betterments. (*Boardman* v. *L. S.*, etc., *R. R. Co.*, 84 N. Y. 177.) Every dividend, whether of stock or cash, that is to any extent a diminution of the value of the *corpus* as it existed at the time the dual ownership commenced, is to that extent capital. (*Minot* v. *Paine*, 99 Mass. 108; *Daland* v. *William*, 101 id. 571; *Leland* v. *Hayden*, 102 id. 542; *Heard* v. *Eldridge*, 109 id. 258; *Gifford* v. *Thomas*, 115 id. 478; *Sproule* v. *Bouche*, 29 Eng. L. R. Ch. Div. 635.) The letter written by James P. Kernochan on testator's direction and examined by

him, became in law testator's own letter and is competent. (1 Phillips on Ev., chap. 5, § 4, pp. 100, 1C 1; *Shear* v. *Van Dyke*, 10 Hun, 528; *Gillespie* v. *Brooks*, 2 Redf. 349.) Under statute and by common law, executors have the power to settle claims with the approval of the surrogate. (*Wood* v. *Tunnicliffe*, 74 N. Y. 38.)

*William Jay* special guardian of Marie Marshall. The ownership of a dividend is determined on the day when it is declared, without reference to the day when it is actually paid. (*Hyatt* v. *Allen*, 56 N. Y. 553; *Hall* v. *Newichawanic Co.*, 8 Hun, 459; affirmed, 71 N. Y. 593; *Goldsmith* v. *Smith*, 25 Hun, 201.) The contention of Mrs. Marshall's executors that the value of the option to subscribe for other stock and amounting to $44.478, was properly classed by the executors as income, and that the learned surrogate erred in allotting this sum to the principal, is untenable. (*Atkins* v. *Albree*, 94 Mass. 359; *Boardman* v. *L. S. & M. S. R. R. Co.*, 84 N. Y. 157; *Moss's Appeal*, 83 Penn. St. 364; *Minot* v. *Paine*, *supra*; *Brinley* v. *Grou*, 50 Conn. 66.) The interest paid to Mrs. Marshall on her money in the testator's hands is excessive, in that interest is calculated upon interest, whereas if the estate of the testator is liable for interest at all, simple interest only can be recovered. (*Conn.* v. *Jackson*, 1 Johns. Ch. 13; *Young* v. *Hill*, 67 N. Y. 162; *Ackerman* v. *Emott*, 4 Barb. 626; *Lansing* v. *Lansing*, 45 id. 182; *Smith* v. *Velie*, 60 N. Y. 106.) The allowance of commissions to the widow as an executrix under the will of the husband is contrary to the provisions of the will. (*Secor* v. *Sentis*, 5 Redf. 570; *In re Gerard*, 1 Dem. 244)

*Edward S. Dakin* special guardian for Marshall R. Kernochar. Compound interest should never be calculated except by special agreement made on consideration after the simple interest has become due. (*Young* v. *Hill*, 67 N. Y. 162; *State of Conn.* v. *Jackson*, 1 John. Ch. 13.) The testator's letter to Mrs. James does not constitute any agreement. The statute providing for the award of commissions by the

surrogate on the settlement of an executor's accounts is not mandatory, it only furnishes a definite rule as to amount when any such rule is to be applied. (*Secor* v. *Sentis*, 5 Redf 570; *In re Gerard*, 1 Dem. 244.) In every case where an extra dividend of surplus earnings is made in cash, it is clearly equitable to pass to capital such part of said dividend as is shown to have been earned before the life tenancy commenced. (*Hill* v. *Newichawanic Co.*, 8 Hun, 459; 71 N. Y. 593; *Sproule* v. *Bouche*, 52 L. T. [N. S.], 366; *Minot* v. *Paine*, *supra*; *Deland* v. *Williams*, 101 Mass. 571; *Leland* v. *Hayden*, 102 id. 542; *Brinley* v. *Grou*, 50 Conn. 66; *Van Doren* v. *Alden*, 19 N. J. Eq. 117.) The value of the options and privileges was properly adjudged to be capital. (*Atkins* v. *Albree*, 12 Allen, 359.)

DANFORTH, J. This is an appeal from a judgment of the Supreme Court, affirming a decree of the surrogate of the county of New York, on a judicial settlement of the account of the executors of John R. Marshall, deceased. The account was objected to by several of the parties interested, and with the objections, sent to a referee to hear and determine. Upon the coming in of his report, it was in substance confirmed by the surrogate, and upon appeal to the General Term, his decision was affirmed. All parties claim under the will of Mr. Marshall, and the principal questions now raised concern the rights of the donee for life and the remaindermen, and depend for an answer upon the true construction of that provision of the will which empowers the executors " to receive the rents, interest and income" of so much of the estate as was given to them in trust, to apply the net amounts of such rents or income to the use of the widow of the testator during her life, and after her death to divide the remaining estate among his surviving daughters and the issue, if any, of such as may have died.

Among the items of personal property left by the testator was one of 5,000 shares of the capital stock of the Panama Railroad Company. This was inventoried by the executors

at $100 per share, as its par value, and $275 as its market value, and $1,375,000, as its assessed value. On the 14th of April, 1881, a dividend of $25,000 (No. 90) was declared upon this stock, payable May 2, 1881. The testator died during the night of April 20, at ten minutes past eleven o'clock. The executors treated this dividend as principal, and charged themselves with it in these words; "Panama dividend declared April 14, 1881, books closed for transfer April 20, 1881, 2 P. M., and payable May 2, 1881." Mrs. Marshall, the widow and executrix of the testator, objected to this in both characters, alleging "that no such amount as the said sum of $25,000 formed any part of the estate of John R. Marshall at the time of his death, and that said statement and item, and said amount of $25,000, should be stricken from said inventory and from said account," and added to the items of income, and as such received by the executors.

The decision of the surrogate was against her contention, and, we think, properly. As soon as the profits on shares of stock are ascertained and declared, they cease to be the property of the company, and the owner of the shares becomes entitled to the dividend. It at once forms part of his estate. The fact that they are made payable at a future time is immaterial. The dividend to which the life tenant may be entitled as income, can only be that which the company declares after that relation is acquired. In this case the dividend represented profits, or income, but had become a debt before the will took effect. Mrs. Marshall was entitled to income merely.

In *Cogswell* v. *Cogswell* (2 Edw'ds, Ch. 231), cited by the appellant, the testator directed that his wife be permitted "to take the interest or dividends" on certain stock and the question submitted was "as to the time from which she would be entitled to dividends," and the vice-chancellor said from the death of the testator, "that is to say," he adds, "the dividends which may accrue, or be declared, or become payable at any time after" that event. The terms of the will and the question were unlike those before us. The will in one

case gives income or profits, in the other dividends, that is the share of income or profits already ascertained and declared. The first gives that to which the testator had no legal title. The other might include that of which he became the legal owner on the day when the dividend was declared, although it remained unpaid. (*Hyatt* v. *Allen*, 56 N. Y. 553; *Hill* v. *Newichawanick Co.*, 8 Hun, 459, affirmed in 71 N. Y. 593.

*Second.* It is stated in the account that the 5,000 shares of Panama railroad stock were sold to the Panama Canal Company for $265.74⅔ per share, making $1,328,714.32. The life tenant objected to the account in this respect, alleging that in fact the stock was sold at $250 per share only, and not $265.74⅔, as in the account stated. The facts, so far as they are deemed material in presenting this question, and as found by the referee, show that prior to the death of the testator, the Panama Railroad Company had not only earned and paid dividends, but had accumulated securities, money and other assets from earnings over and above expenses and dividends, and on the 10th of June, 1881, had on hand $1,102,000 as a sinking fund for the redemption of outstanding obligations. On the day last named an agreement was entered into between certain stockholders of the railroad company and the Universal Inter-Oceanic Canal Association for the sale of their stock to the canal association for $250 for each share, and also providing that the canal company should have the sinking fund, but that the stockholders should be paid by the canal company a sum equal to a ratable proportion of the $1,102,000 sinking fund above-named, which was equivalent to $15.74 per share of the capital stock. This makes the sum of $78,714.34, and in the account of the executors is merged in the price at which the stock was sold the canal company and credited to principal. This disposition was sustained by the referee and surrogate, the life tenant excepting thereto and claiming it should have been carried to income. We think the exception cannot stand. The money was not paid as a dividend, nor was it distributed among stockholders, but only to such as sold their shares to

the new company — the canal association  Indeed, as stock-
holder, no one received any part of it.  It was paid as a price
to the seller.  The Panama Railroad Company was not dis-
solved and its stockholders who did not sell have continued
to receive dividends, and the canal company which purchased
the shares once owned by the testator, have received in like
manner dividends on the shares so purchased.  Had the shares
been retained by the executors, the money in question would
not have been received by them.  It is true that the sale in
effect carried with it the interest which each shareholder,
as a member of the company, had in the sinking fund, so
that the new shareholder was substituted for the old.  The
fund was the accumulation of profits, and may properly be
regarded as part of the capital of the company.  But it still
remained pledged for the bonds, for the payment of which it
was created, and its possible value only enhanced the value of
the shares.  The price paid for the shares, although increased
by this prospective advantage belonged altogether to the
remaindermen, and was properly carried to principal and not
income.

*Third.* It was also provided in the same agreement of June
tenth, that all earnings of the railroad company to and includ-
ing June, 1881, and all moneys and other effects not by that
agreement to be left with the railroad company, should be
transferred by the railroad company to a trustee "for the
benefit of all the existing stockholders," and belong to, and
be divided among the shareholders "who are such at the time
of the declaration of such dividend " or transfer of the railroad
company.

This was not carried out, but before June thirtieth, the
assets so referred to were sold and transferred by the railroad
company to a syndicate for the sum of $1,693,200, and this
was paid to the railroad company June 30, 1881.  It amounted
to $24.26 on each share of the capital stock of the railroad
company, and on the same day the railroad company, on the
report of its treasurer that the amount of funds on hand
"subject to distribution, was sufficient to authorize a dividend

of $24.26 upon each share of the capital stock of the company," adopted the following resolution :

"*Resolved*, That a dividend of twenty-four dollars and twenty-six cents ($24.26) on each share of the capital stock of this company be, and the same is, hereby declared, payable on and after Monday, the first day of August next, to the stockholders of record, or their legal representatives. That the books of transfer be closed on the afternoon of the thirtieth instant, and be reopened on the morning of the 2d of August, 1881." This dividend was numbered "91" in regular order, and was payable and paid at the time the usual quarterly dividends were paid. It appeared also that the assets which formed the consideration of the payment by the syndicate, were accumulated net earnings, represented by cash or securities calling for cash. The executors credited to income the above amount of $24.26 per share, making $121,300. It was objected, in behalf of the remaindermen, that the credit to income was wrong, and that the sum of $121,300 should have gone into the principal of the estate. The referee finds and reports that of this sum only $22,442.85 should be regarded as income belonging to the life tenant, and the residue, $98,857.15, should be regarded as a portion of the *corpus* of the estate. To so much of this finding as apportions any part to principal, exception was taken in behalf of the life tenant.

The referee made the apportionment in question by ascertaining how much was earned before and how much after the death of the testator, and so doing applied a rule which may be founded on general equity, viz : that when a fund is given for life to one beneficiary, and remainder over, the first shall have its earnings after his life tenancy begins, and the remainderman the balance. I find nothing in the will which indicates that the testator intended any such investigation or division, or that any other than the ordinary rule, which gives cash dividends declared from accumulated earnings or profits to the life tenant, should be applied. The direction to his

executors is to receive the rents, interest and income of his estate, and apply the net amount of such rents or other income (with certain exceptions not now material) to the use of his wife. From the shares in question no income could accrue, no profits arise to the holder until ascertained and declared by the company and allotted to the shareholder, and that act should be deemed to have been in the mind of the testator, and not the earnings or profits as ascertained by a third person, or a court upon an investigation of the business and affairs of the company, either upon an inspection of their books or otherwise. This was held in *Clapp* v. *Astor* (2 Edwds. Ch. 379), in construing a contract relating to "net profits or dividends," and by this court, in *Hyatt* v. *Allen* (56 N. Y. 553); the principle stated was said to be founded in good sense and applied in construing an agreement made August 11, 1871, which provided that "all profits and dividends of and upon" certain "stock," up to the 1st of January, 1872, should be paid to defendant. No dividends were declared, or distribution of profits made prior to that time, but in April, 1872, a dividend of $15 per share was declared and was received by defendant. Plaintiff sued to recover it, and a referee found that $250 of this dividend was earned between August 11, 1871, and July 1, 1872, and gave judgment for that amount. This court reversed the judgment, saying there were profits earned by the corporation up to January 1, 1872, but they were not the profits of the stockholders in any legitimate sense. "There were no profits accruing to the stockholders until they were set apart by the corporation for their use." The same principle is to be applied in determining the relative rights of a tenant for life and a remainderman. Payments in respect of profits accruing and properly divisible as such, are income and belong to the tenant for life, if the sum payable is ascertained and declared after the testator's death.

In *In re Hopkin's Trust* (L. R., 18 Eq. 696), a holder of shares bequeathed his personal estate to trustees, in trust, to permit his wife to receive the dividends, interest and income

thereof for her life, remainder over.   He died in December,
1870.   In January, 1873, an extraordinary dividend was
declared on part of the shares for five years previously, and
in July, 1873, a special dividend was declared on others for
the half year previous.   It was held that the life tenant was
entitled to both ; that although the company might have
capitalized the earnings they, by resolution, treated the money
as dividend and not capital and their decision was conclusive.
The same effect was given to the determination of the com-
pany in characterizing its earnings in *Barton's Trust* (L. R.,
5 Eq. 238, 245) ; and the rule is a reasonable and proper one,
which limits the right of a stockholder to profits by the action
of the managers of a corporation or company.   It is their
sole and exclusive duty to divide profits and declare dividends
whenever, in their judgment, the condition of the affairs of
the corporation renders it expedient, and it would lead to
great embarrassment and confusion if a court should under-
take to interfere with their discretion so long as they do not
go beyond the scope of their powers and authority.

    In this case no portion of the earnings which entered into
the dividend had been capitalized by the company, and, there-
fore, the inquiry when the profits were earned, out of which
it was to be paid, was immaterial.   It is not claimed that the
declaration of the dividend, as dividend from profits, was
*ultra vires;* and whenever earned they were not profits until
the directors so declared.   In *Hyatt* v. *Allen (supra)*, it was
thought by the learned judge, who spoke for the court, that
"a gift of the profits and dividends of stock for life would
not be held to carry dividends declared after the death of the
beneficiary, although made from profits accrued during his
life," making the act of the company conclusive and giving
the earnings to the time of the declaration of the dividend.
*Sproule* v. *Bouch* (L. R. [29 Ch. Div.] 635, 653) sustains
this view.   "The general principle applicable to these
inquiries may, in our opinion," say the court in that case, "be
thus stated :   When a testator or settlor directs or permits
the subject of his disposition to remain as shares or stock in a

company, which has the power either of distributing its profits as dividend, or of converting them into capital, and the company validly exercises this power, such exercise of its power is binding on all persons interested under him (the testator or settlor) in the shares, and consequently what is paid by the company as dividend goes to the tenant for life, and what is paid by the company to the shareholder as capital, or appropriated as an increase of the capital stock in the concern, enures to the benefit of all who are interested in the capital. In a word, what the company says is income shall be income, and what it says is capital shall be capital." I think, therefore, the executors properly carried the whole of this dividend (91) to income, that the referee and surrogate erred in making an apportionment, and, therefore, that the exception of the life tenant should prevail.

*Fourth.* The executors classed as income certain options or privileges given by various companies in 1881, to subscribe for stocks and bonds, in all of the value of $44,478. This was objected to by the remaindermen and the objection sustained by the referee and surrogate.

The privilege or option was to subscribe for, and take at par one or more bonds or shares of stock for a certain number of shares of stock already held by the estate. The right to subscribe belonged to the trust estate and accrued upon condition the estate chose to pay for, or purchase the bonds or stock. If the option was accepted, the purchase operated to increase the capital or change its manner of investment, and if not accepted, the life tenant could neither complain of the choice of the trustees, nor in any way control their discretion. We think its value did not belong to her, and that the decisions of the referee and surrogate in regard thereto, were correct.

*Fifth.* The guardian of Marie Marshall (a person of unsound mind), and the guardians for Kernochan (an infant) also appeal against, first, allowance of compound interest on moneys found due to Mrs. Marshall from the testator; second, commissions to Mrs. Marshall. First. Both referee and surrogate were against the objectors as to the first. As to the

second, the referee sustained the objection, but the surrogate overruled it and allowed $15,000 to Mrs. Marshall as commissions. As to the first the testator had the principal moneys in hand for the purpose of investment and reinvestment, but mingled them with his own funds. It was not improper, therefore, under the circumstances of this case, to charge him with interest upon interest, as if received in the usual manner, for he forebore investment and used the moneys for his own convenience.

As to commissions: The referee found that Mrs. Marshall "duly qualified as executrix of the last will and testament of John R. Marshall, deceased, on the 8th day of October, 1881 and has been at all times since that date ready and willing to take part, and has taken part in the management of the estate."

The objection raised in behalf of the remaindermen hangs upon the request of the testator contained in the will, in these words: "It is also my request that all persons herein named as executors will consent to act as such executors and trustees, and that each executor and trustee, other than my wife, do also receive and take the full rate of commissions provided by law for each executor, intending thus to provide suitable compensation for their services in and attention to the duties herein devolved upon them." We think the intention of the testator was to exclude his wife from compensation. Substantially the whole income of the estate, the result of the management of the executors, of whom she was one, is given to her, and it cannot be supposed that he intended she should also be paid for caring for it.

The decree of the surrogate and judgment of the Supreme Court should be modified according to the above opinion, and, as so modified, affirmed without costs in this court to either party.

RUGER, Ch. J., RAPALLO and FINCH, JJ., concur; EARL, J., concurs except as to allowance of compound interest, and as to that item he dissents; ANDREWS, J., dissents as to the $24.26 a share on the ground that it was in substance a closing out of the sale of the stock and a distribution of capital.

Judgment in accordance with opinion.