(*Surrogate's Court, Orange County.* · October 16, 1890.)

WILLS—DESCRIPTION OF PROPERTY—INCOME.

    Testator bequeathed to his wife for life, "the use, interest, and income" of his estate, part of which consisted of bank-stock. The bank afterwards reduced its capital by returning to the stockholders half of it, with a premium of 40 per cent. to be paid out of the surplus. *Held*, that the 40 per cent. premium returned to testator's estate was "income," and passed under the will to the widow.

Judicial settlement of the estate of William L. F. Warren, deceased.

*E. L. Fancher*, for Carolyn C. Vermeule.  *E. A. Brewster*, for Alida J. and William W. Carpenter.  *Howard Thornton*, for Catharine Warren.

COLEMAN, S.  The testator, William L. F. Warren, died in November, 1879. At the organization of the Newburgh National Bank, in 1864, he subscribed for and became the owner of 50 shares of the capital stock, for which he paid $5,000, its par value.  At the time of his death he was still the owner of this stock, and the executor and trustee under his will retained the same until June 15, 1890, when the capital stock of the bank was reduced one-half.  On the 27th of January, 1890, the directors passed the following resolution: "Resolved, that in the opinion of the members of this board it is expedient, and they recommend, that the capital stock of this bank be reduced from $800,000 to $400,000, by returning to the stockholders $400,000 of the capital, with a premium of 40 per cent. payable out of the surplus and profits."  And on June 9, 1890, they also passed the following: "Resolved, that the cashier be and he is hereby authorized and directed to transfer $80,000 from the account of surplus fund, and place the same to the credit of 'profit and loss.'  Resolved, that a dividend of forty per cent. (40 per cent.) on the one-half of the capital stock of $800,000 to be returned to the shareholders be declared and payable to the shareholders on and after June 16, 1890."  Shortly after the executor surrendered to the bank the certificate for the 50 shares of stock, and received from the bank a new certificate for 20 shares and $3,500 in cash.  Regular semi-annual dividends have been declared and paid by the bank up to and since the reduction of the capital stock.  Upon the hearing, the president of the bank testified that the 40 per cent. was paid from the accumulated earnings of the bank.  The will of the deceased contains the following clause: "I also give and bequeath to my said wife the use, interest, and income, during the term of her natural life, of all the rest and residue of my personal property and estate," with remainder over as to the principal.  The executor still retains $1,000 of the money paid him by the bank, being the 40 per cent. dividend, and on the settlement it is claimed on behalf of the widow that it should be paid to her as income, derived from the $2,500 of capital returned, and to this the remainder-man objects, and claims that it should be considered capital.  To whom the $1,000 belongs, whether to the life-tenant or to the remainder-man, must be determined by the construction to be given to the clause in the will quoted.  I think it may properly be inferred that the testator supposed that after his death the bank-stock would form a part of his estate; and it is also properly assumed that he knew when he provided that his widow should receive the income from his estate she would not have any right in or to the earnings of the bank until a dividend was declared, though the bank might earn thousands, and might defer dividing for years; but that whenever a dividend was declared, such dividend became at once income to the estate, whether it was paid from earnings made by the bank since the death of the testator or before that time.  *Hyatt* v. *Allen*, 56 N. Y. 553; *In re Kernochan*, 104 N. Y. 618, 11 N. E. Rep. 149.  I therefore conclude that the true construction of this clause in the will gives to the widow as income of the estate any dividend of earnings properly declared by the bank upon

stock belonging to his estate. This payment of 40 per cent. on that part of the capital of the bank which was retired was however an unusual and extraordinary dividend, and there may be a doubt whether it is to be considered as a dividend of earnings to the shareholders, or whether it should not be considered a payment back to the shareholders of capital. The bank in one resolution proposes "to return" to the shareholders $400,000, "with a premium of 40 per cent. payable out of the surplus and profits." And again it is resolved "that a dividend of 40 per cent." on the capital to be returned "be declared and payable to the shareholders." The bank, by its action, could have capitalized its surplus earnings, or it could have divided its earnings among the shareholders in the form of dividends. It had the power to do either, and whether its action was one or the other determines whether the $1,000 was a part of the capital or income from the capital. Until the proceedings were taken by the bank, the surplus earnings belonged only to the bank. By its proceedings, the shareholders acquired a right to so much of the surplus as the bank determined to part with. Did the bank give up this part of its surplus as capital or as earnings? I conclude that it was as earnings. It was determined by the bank to return to the shareholders a portion of the capital they had in the bank, with a "premium" or "dividend," or whatever you may choose to call it, but, whatever it was, it was payable from the "surplus and profits," and the amount was directed to be taken from the "account of surplus funds." It was recorded in the books of the bank as a dividend, and paid out as such. I am of opinion that the widow is entitled to this sum of $1,000 as income derived from the bank-stock.