(111 App. Div. 882)

ROBERTSON et al. v. DE BRULATOUR et al.

(Supreme Court, Appellate Division, First Department. March 23, 1906.)

1. TRUSTS—CAPITAL AND INCOME—DIVIDENDS ON STOCK.

Where testator's will gave railroad stock to trustees, to pay the income and profits to testator's wife for life, with remainder to his heirs, and real estate of the corporation which was not needed in its business was sold and the proceeds distributed as a dividend, the widow was entitled to the same.

2. SAME—DEPRECIATION IN SECURITIES—RIGHT TO ESTABLISH SINKING FUND.

Where testator's will gave certain securities to trustees, to pay the income and profits to the widow, with remainder to testator's heirs, the trustees had no authority to establish a sinking fund from income and profits to provide for depreciation in the value of the securities.

3. SAME—COMMISSIONS OF TRUSTEES.

Code Civ. Proc. § 2802, provides that a testamentary trustee shall be allowed the same compensation as executors and administrators on the basis of receiving and paying out "sums of money." Section 3320, as amended in 1904, provides that a trustee shall receive commissions on all sums of "principal" received and paid out. *Held* that, the amendment having been made after judicial construction of the other sections so as to award commissions only when the property had been received and turned into money, a trustee receiving securities to pay the income and profits to a life beneficiary was entitled to commissions immediately upon the receipt of the property out of the corpus of the estate.

4. SAME.

Where a will gave personal property to trustees, to pay the income and profits to a life beneficiary and to preserve it for certain remaindermen, the life beneficiary was entitled to receive a commission as trustee on personal property received by the trustees.

Appeal from Judgment on Report of Referee.

Action by Alexander F. Robertson and another, as testamentary trustees under the will of John T. Farish, deceased, against Martha S. De Brulatour and others, to have their accounts settled. From the judgment entered upon the report of the referee, all parties appeal. Modified and affirmed.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Henry De Forest Baldwin, for appellant, De Brulatour.

George F. Canfield, for remaindermen.

Edward T. McLaughlin, guardian ad litem for infant remaindermen.

INGRAHAM, J. This action was brought by the trustees under the last will and testament of John T. Farish to have their accounts settled. The controverted questions upon this accounting related to dividends upon stocks bequeathed to the trustees in trust for the testator's widow and as to the commissions to which the trustees were entitled. The trust was created by the sixth clause of the will of John F. Farish, and is as follows:

"Sixth. I give and bequeath to Charles M. Fry, Alexander F. Robertson, and my wife, Martha G. Farish, and the survivors and survivor of them, and to the successor or successors of such survivor, twenty-five hundred (2,500) shares of the capital stock of the New York & Harlem Railroad Company, one thousand (1,000) shares of the capital stock of the New York Central & Hudson River Railroad Company (consolidated), and one thousand (1,000) shares of the capital stock of the Chicago, Rock Island & Pacific Railway Company, also twenty thousand dollars ($20,000) at the par value of the consolidated bonds of the Erie & Pittsburgh Railroad Company, fifty thousand dollars ($50,000) at the par value of the consolidated bonds of the Chicago & Northwestern Railway Company, and thirty thousand dollars ($30,000) at the par value of the first mortgage bonds of the Louisiana & Missouri River Railroad Company, together with all interest accrued on said above-described bonds at the time of my death and all interest accruing thereon thereafter, and also every and all dividends which may be declared on the above-described stocks subsequent to my death, in trust, nevertheless, to receive the income and profits thereof and apply the same to the use of my said wife, Martha G. Farish, during the term of her natural life; and I hereby authorize and empower my said trustees, if it shall seem advisable to them so to do, to sell and dispose of any or all of the aforesaid shares of stock and bonds, and to invest and reinvest the proceeds in such securities as to them may seem advisable and to apply the income arising therefrom as above provided. Upon the death of my said wife I give and bequeath all of the above-mentioned shares of stock and bonds, or the proceeds of such as shall have been previously sold, to such persons as would have inherited the same under the laws of the state of New York, if the same were real estate and I had died, intestate and unmarried, at the same time as my said wife, and in such proportions as they would have inherited the same, respectively."

The testator died, a resident of the city of New York, on the 13th day of May, 1891. He left, him surviving, his widow, but no children; his next of kin being certain brothers and sisters, all of whom are now dead. Those who are his present next of kin are the descendants of two sisters, who are parties to this action. The first questions to be considered relate to a dividend declared on September 19, 1899, by the New York & Harlem Railroad, which amounts to $31,250; to a dividend of 100 shares of stock declared as a stock dividend upon the stock of the Chicago, Rock Island & Pacific Railroad Company held by the trustees, and to the amount realized by the trustees for the sale of rights to subscribe for certain additional stock of the Chicago, Rock Island & Pacific Railroad Company and the New York Central Railroad Company, and the allowance of commissions.

Before discussing the question relating to these dividends, we will consider the intention of the testator relating to this trust as disclosed by the will. The testator, leaving a large estate, made provision for his wife. He gave her $100,000 in cash, a stable, and his horses, carriages, furniture, and household articles, and created for her benefit this trust, consisting of securities of the par value of $425,000. This trust consisted of $325,000 of stock of three railroad companies and

$100,000 of railroad bonds. These specific securities having been bequeathed to his trustees for the benefit of his wife, he also bequeathed to them "all interest accrued on said above-described bonds at the time of my death and all interest accruing thereon thereafter, and also every and all dividends which may be declared on the above-described stock subsequent to my death." The bequest was in trust "to receive the income and profits thereof and apply the same to the use of my said wife, Martha G. Farish, during the term of her natural life," with a power to the trustees to sell any or all of these securities, "and to invest and reinvest the proceeds in such securities as to them may seem advisable and to apply the income arising therefrom as above provided," viz., to the use of his wife during the term of her natural life. Having thus disposed of what should accrue upon these securities by way of income and profits during the life of his wife, upon the death of his wife he bequeathed "all of the above-mentioned shares of stock and bonds, or the proceeds of such as shall have been previously sold, to such persons as would have inherited the same under the laws of the state of New York, if the same were real estate and I had died, intestate and unmarried, at the same time as my said wife, and in such proportions as they would have inherited the same, respectively."

It would seem that the testator intended by this bequest to dispose of all these securities, including any income that was received during the continuance of the trust and what would be left of the trust upon the death of his wife. He disposed of the "income and profits" of the securities received during the life of his wife by directing that they should be applied to her use. What he directed should pass upon the death of his wife was "the above-mentioned shares of stock and bonds, or the proceeds of such as shall have been previously sold"— an indication, it seems to me, that what the testator understood would remain undisposed of at the death of his wife were these specific shares of stock as they then stood, or the proceeds in the hands of the trustees in the event that such shares had been sold by the trustees under the power given to them. There was no expressed intention that any dividend or interest that had been received by the trustees upon the shares of stock or bonds should be held by the trustees and turned over to those entitled to the remainder. This provision for the wife was to be in lieu and bar of all dower and right of dower and of any other claim or interest whatsoever that she might have in his estate, real or personal, or any part thereof. There is certainly in this will no indication that it was the intent of the testator that there should be anything deducted from the sums received by the trustees in the way of dividends, income, or profits to be accumulated by them to prevent any deterioration or depreciation in the value of the stock and bonds during the continuance of the trust. The primary object was to make provision for his wife during her life, and, subject to that provision, what was left at her death was to be disposed of as indicated.

There was bequeathed by the testator to these trustees, as a part of the trust property, 2,500 shares of the capital stock of the New York & Harlem Railroad Company. On September 19, 1899, the di-

rectors of the New York & Harlem Railroad Company passed the following resolutions:

"Whereas, it appears from the treasurer's report that the company's cash surplus now amounts to upwards of $2.500,000 over and above all claims and obligations, existing and contingent, and that the same is now available for distribution among the stockholders: It is further resolved, that the sum of $2,500,000 of the said surplus distributed at the rate of $12.50 per share to all stockholders of record at the close of business on the 23d day of September, 1899, and that the treasurer be and he is hereby authorized and directed to make such payment on the 2d day of October, next."

The amount of this dividend was $31,350, which was received by the trustees and retained by them; and the first question presented is whether this amount is to be retained by the trustees as capital of the trust, or whether it belongs to the widow as beneficiary for life.

The New York & Harlem Railroad Company was the owner of a steam railroad and was also the owner of a street railroad in the city of New York. Long prior to the death of the testator, the steam railroad had been leased to the New York Central & Hudson River Railroad Company, which agreed to pay the New York & Harlem Railroad Company as rent 8 per cent. per annum upon its stock. At the death of the testator, the New York & Harlem Railroad Company operated its line of street railroad, and the profits of that line were divided among its stockholders. The company also owned several parcels of real estate in the city of New York. After the death of the testator the New York & Harlem Railroad Company leased its city line of railroad to the Metropolitan Street Railway Company. There was evidence that after this lease certain real estate that belonged to the Harlem Railroad Company and which was not needed in its business was sold, and it would appear that the particular money used in paying this dividend was partly the proceeds of the sale of this real estate. The amount distributed as a dividend, however, was surplus which represented the accumulations of profits of the company in the past, either from its operation, or from the increase in the value of its real estate; and this distribution was simply a distribution of surplus profits of the company realized from its operations and which were not needed in the conduct of the company's business. The profits as such were realized when the company's real estate was sold. It then became money in its possession as surplus profits, and was distributed by the company among its stockholders as such. The trustees, therefore, received from the New York & Harlem Railroad Company a dividend of $12.50 a share as a distribution by the company of its surplus. The testator had directed the trustees to receive the income and profits of these securities and to apply the same to the use of his wife during her life.

There is nothing in the evidence to indicate that this dividend was a distribution of the capital of the railroad company, as the witnesses all testify, and the referee finds, that the capital of the company was intact after the payment of the dividends, and the property of the company was largely in excess of its indebtedness and capital stock. Of late years this question has been much discussed, and there is now a settled distinction between a case where specific securities consisting of stock and bonds are bequeathed to a trustee, with a direc-

tion to pay the income and profits of these specific securities to a life beneficiary, and where a sum of money is bequeathed to trustees, with directions to invest that sum of money and to pay the income of the amount so bequeathed and invested to a beneficiary. In the latter case, the trustees are bound, whatever the form of the investment may be, to preserve intact the capital of the trust bequeathed to them; and while, if in case of unexpected decline in the value of the securities, or for any other reason, the capital becomes impaired, where the trustees have acted in good faith and observed the rules of law in carrying out the trust, they are not required to make up such deficiency from the income, still, when they purchase securities at a high premium, they are justified in applying a part of the income or dividends to prevent a depreciation in the value of the securities, where such interest or dividends represent in part a premium which they have paid; but a different situation is presented where a person bequeaths to trustees specific securities and directs that the income and profits of such securities be paid to a beneficiary for life, with a bequest over of such securities at the termination of the life estate. In the latter case it is the income or profits that the trustees received from the securities to which the life beneficiary is entitled, not the income of a specific fund which represents the value of the securities at the time of the testator's death; and I think it is now established that when the profits or surplus of a corporation, which it has earned or realized in the management of its business, are paid to its stockholders by way of dividends, whether such profits or surplus has been earned before or after the creation of the trust, so long as the amount that is actually distributed is actual surplus earned, or income or profits made, by the corporation in its business, and distributed as such, it is income or profits which go to the life tenant.

The first case to which I will call attention is Matter of Kernochan, 104 N. Y. 618, 11 N. E. 149. In that case the trustees were authorized to receive the "rents, interests, and income" of property given to them in trust and to apply the net amount of such rents, interest, and income to the use of the widow during her life, and after her death to divide his estate among his surviving daughters and the issue, if any, of such as may have died. Among the personal property left to the trustees was 5,000 shares of the capital stock of the Panama Railroad Company. It seems that this stock was, subsequent to the death of the testator, sold to the Panama Canal Company at something over $265 per share. As a part of the agreement of sale it was provided that:

"All earnings of the railroad company to and including June, 1881, and all moneys and other effects not by that agreement to be left with the railroad company, should be transferred by the railroad company to a trustee for the benefit of all the existing shareholders who are such at the time of the declaration of such dividend or transfer of the railroad company."

It appeared that these assets were subsequently sold to a syndicate for an amount which equaled $24.26 on each share of the capital stock of the company; and on June 30, 1881, a dividend of $24.26 on each share of the capital stock of the company was declared. It appeared that the assets which formed the consideration of the pay-

ment by the syndicate were accumulated net earnings, represented by cash or securities calling for cash. The remaindermen objected that this sum should not be credited to the income, but should have been held as capital. The referee found that the amount after the death of the testator was income, but that earned before the death of the testator was principal. Judge Danforth, delivering the opinion of the court, said:

"I find nothing in the will which indicates that the testator intended any such investigation or division, or that any other than the ordinary rule which gives cash dividends declared from accumulated earnings or profits to the life tenant should be applied. * * * From the shares in question no income could accrue, no profits arise, to the holder until ascertained and declared by the company and allotted to the shareholder, and that act should be deemed to have been in the mind of the testator, and not the earnings or profits as ascertained by a third person, or a court upon an investigation of the business and affairs of the company, either upon an inspection of their books or otherwise."

Then after examining the authorities, the learned judge continued:

"In this case no portion of the earnings which entered into the dividend had been capitalized by the company, and therefore the inquiry when the profits were earned, out of which it was to be paid, was immaterial. It is not claimed that the declaration of the dividend, as dividend from profits, was ultra vires, and whenever earned they were not profits until the directors so declared."

And quoting with approval from Sproule v. Bouch, L. R. 29 Ch. Div. 635, as follows:

"The general principle applicable to these inquiries may, in our opinion, be thus stated: When a testator or settlor directs or permits the subject of his disposition to remain as shares or stock in a company, which has the power either of distributing its profits as dividend, or of converting them into capital, and the company validly exercises this power, such exercise of its power is binding on all persons interested under him (the testator or settlor) in the shares, and consequently what is paid by the company as dividend goes to the tenant for life, and what is paid by the company to the shareholder as capital, or appropriated as an increase of the capital stock in the concern, inures to the benefit of all who are interested in the capital. In a word, what the company says is income shall be income, and what it says is capital shall be capital."

The next case to which I wish to call attention is McLouth v. Hunt, 154 N. Y. 179, 48 N. E. 548, 39 L. R. A. 230. In that case the estate of the testator was bequeathed to the trustees with a provision that his directors pay over to the use and benefit of each of his grandsons, respectively, from and after the arrival at age of his said grandsons, respectively, the full income of one of the said parts. The portion of the estate which the executors received in trust was 254 shares of the capital stock of the Western Union Telegraph Company upon which the trustees received a stock dividend of 10 per cent., represented by certificates issued to them for 25.4 additional shares. This dividend was declared from the surplus earnings of the corporation, and it was claimed by the trustees that these stock dividends upon the Western Union stock was not income payable to the life tenants, but an accession to the capital which went to the remaindermen. The court held that what the corporation really did was to issue to the shareholders its own obligations in the form of stock certificates against the accumulated earnings which it had on hand, and these certificates,

having a market value, could readily be converted into money by the shareholders, so that the transaction was in substance a distribution of profits, and that in that case the stock dividend represented income and properly belonged to the life tenant.

The next case is Matter of Rogers, 161 N. Y. 108, 55 N. E. 393. In that case the testator created three separate trusts for the benefit of his children during their lives, with remainders to their issue. A part of the principal devised to the trustees was shares of the capital stock of the Rogers Locomotive & Machine Works. The testator died in 1868. The capital stock of the corporation was then $300,000, and this stock was appraised at $125 per share. The corporation continued business until 1893, paying dividends each year. In 1893 it sold its plant for the sum of $2,750,000, to be paid in stock of a new corporation known as the Rogers Locomotive Company, whose capital stock was $3,000,000. The stock of the new company, obtained from the sale of the plant of the old company, was divided among the stockholders of the old company in proportion of ten shares of new stock to one share of old stock. After this sale the old company remained in possession of other property which it had accumulated consisting of capital on hand, bills receivable, real estate, government bonds, and stock of other companies, amounting in round numbers to $3,-000,000. This property the officers of the old corporation converted into money and distributed it among its stockholders. The question arose as to whom this belonged, whether to the life tenants or to the remaindermen. The court said:

"As we have seen, the surrogate held that all that was received upon the sale of the plant should be retained by the trustees as capital, and this included that which had been paid out for raw material. He also held that the first cash dividend made on the liquidation of $100 per share should also be retained by them as capital"

—and that the balance of the $3,000,000 that was divided among the stockholders of the old company was income to go to the life tenant. This determination was affirmed upon the ground that this $100 per share represented what was reserved for working capital by the new company, and was therefore capital, and that the balance was profits, which, being properly distributed as such, went to the life tenants. Here was property representing accumulated surplus which was distributed upon the winding up of a corporation; yet where it was distributed as surplus profits, and not as a part of the plant or working capital of the company, it was held to go to the life tenants, although apparently it was realized from real estate, government bonds, and stock in railroad corporations, cash on hand, and bills receivable.

The next case is Lowry v. Farmers' Loan & Trust Company, 172 N. Y. 137, 64 N. E. 796. In that case the testator died in 1895. He gave one-fourth of his residuary estate to trustees, to apply the rents, incomes, and profits thereof to the use of the testator's wife until her death or remarriage, in either of which events the trust property should go to increase the portion of the estate held in trust for the benefit of his children. As a part of this trust there was stock of the Pullman Palace Car Company, eight shares of which formed a part of the trust estate held for the plaintiff. That company declared a dividend

of 50 per cent., payable in certificates of stock at par value. This dividend was declared and obtained from the accumulations of net surplus as the same appeared in the accounts of the company; and it was held that such a transaction, although in the form of an issue of stock certificates, was a distribution of the profits and what the stockholders got represented income and was income. The rule is that "where a corporation has declared a dividend upon its capital stock, payable in new stock certificates, if it is based upon an accumulation of earnings or profits, by their distribution in that manner the stockholders receive the representative of income and not of capital"; that "while the corporate action may not be necessarily conclusive upon the court with respect to the question, if it is based upon facts and is not purely arbitrary, it will and should be controlling." The court then goes on to say:

"It is true enough, as the appellant argues, that the testator, at the time of his death, owned the right to share in the assets of the corporation, proportionately to the amount of stock which he held; but it does not therefore follow that dividends thereafter made from the accumulations of earnings must be regarded and treated as additions to the capital of the trust estate. All stockholders are interested in the operation of the property of a corporation and their shares of stock represent individual interest in the corporate enterprise, in its capital, as in its net earnings; but the corporation itself has the legal title to all the properties and holds them for their benefit. They have a right to dividends, only as the corporate agents, in the exercise of their discretion, may declare them. * * * The declaration of a dividend by a corporation in active operation is the appropriation of a portion of the assets, which represented the net earnings of the corporation, for the use of the stockholders, and pro tanto the assets are diminished. The stock no longer represents them. The capital is unchanged; but the value in the market of the shares may be affected by the diminution in the amount of the corporate assets. That the value of the shares of stock has been lessened by a dividend is a fact of no relevancy in determining the question of whether the dividend is to be regarded as income to the life tenant or as capital for the remainderman. That question will be determined by the origin of the dividend. In this case a fund had been created by an accumulation of the net earnings of the corporation and it remained a part of the general assets, until, in the judgment of the directors, the time came when it was proper and prudent to distribute it among the stockholders. That which the directors of the corporation distribute among its stockholders, without intrenching upon capital, must be comprehended within the term 'profits,' and we should assume that the testator intended that what might be paid in that way should belong to the beneficiary. There is no question of diminishing the capital, nor of increasing the capital for any corporate purpose or need. It was simply a mode of distributing the profits earned by the employment of the capital."

The case of Chester v. Buffalo Car Mfg. Co., 70 App. Div. 443, 75 N. Y. Supp. 428, is entirely in line with these decisions, for there the court said:

"While it is subject to modification and variation, the natural and fundamental idea of life income payable under a will is of that current income which accrues and becomes payable from time to time during the life tenancy upon a principal fixed as of the time when the trust took effect and remaining substantially unchanged."

The fact that the particular money that was used in the payment of this dividend was from the sale of real estate seems to me entirely unimportant. The company had been in operation for many years. It had from time to time moved its depot, as its business required.

It had invested money in the real estate necessary for its new depot, and when the old real estate became unnecessary it was sold, and the proceeds of such sale became money of the company, to be distributed if it was not needed for the business of the company. It represented surplus profits, just as much as if the money invested in the new real estate had been kept in its possession and this real estate exchanged for the new real estate required for the new depot. In this case, as in Lowry v. Farmers' Loan & Trust Company, supra, "a fund had been created by an accumulation of the net earnings of the corporation and it remained a part of the general assets, until in the judgment of the directors, the time came when it was proper and prudent to distribute it among the stockholders," and "that which the directors of the corporation distribute among its stockholders, without intrenching upon capital, must be comprehended within the term 'profit,' and we should assume that the testator intended that what might be paid in that way should belong to the beneficiary." It follows that the learned referee was wrong in holding that this dividend was a part of the capital, and that the judgment should be modified by directing it to be paid to the life tenant.

The second question presented is as to the 100 shares of the capital stock of the Chicago, Rock Island & Pacific Railroad Company, and as to certain cash dividends paid upon the stock held by the trustees. The same principal that we have before discussed in regard to the dividend of the Harlem Railroad Company determines this question, and the referee was clearly right in holding that these dividends belonged to the life tenant.

The next question is as to the proceeds of the sale of rights to subscribe in the Chicago, Rock Island & Pacific Railroad Company and the New York Central Railroad Company. We think the referee was right in respect to this question, and that the amount realized was a part of the capital of the estate. When the corporation gave to the existing stockholders a right to subscribe to its capital stock at a price fixed, there was nothing in this right of the nature of a dividend or distribution of profits. It was a right which accrued to the owners of the stock as an incident to its ownership. If the owner of the stock had accepted the option and had subscribed to the stock, the stock so subscribed and paid for out of the capital of the trust would be clearly a part of the trust property, and any increase in the value of that stock after its subscription would accrue to the capital of the trust. The trustees, not being in a position to make these subscriptions, sold the right to subscribe, and the proceeds realized from a sale of this right were a part of the capital of the trust. This question is presented in Matter of Kernochan, 104 N. Y. 618, 11 N. E. 149, and that case is controlling upon this point.

The next question is as to the necessity of establishing a sinking fund to provide for any depreciation in the value of the securities which form a part of the trust estate. This question is also settled by the authorities that we have before considered. It is now settled that where specific securities are devised, with a direction to pay the income and interest of those securities, the beneficiary is entitled to all the interest, even though the payment of all the interest would tend

to reduce the selling value of the securities. McLouth v. Hunt, supra;
Matter of Rogers, 22 App. Div. 428, 48 N. Y. Supp. 175.

The only remaining question is as to the right of the trustees to
one-half commissions for receiving the entire trust property. I think
we must treat this question without reference to the fact that the
executors and trustees were the same persons. Whether or not the
executors were entitled to commissions is not before us. The will
bequeathed certain property to the trustees in trust, and it has been
received by them, and is now held by them under the provisions of
the will; and these trustees are entitled to such a commission as the
law allows to trustees who have received bequests of personal prop-
erty in trust, to hold it during the life of the beneficiaries and to pay
the income and proceeds thereof during her life to the beneficiary
and upon her death to deliver the securities over to the remainder-
men. Upon this appeal we are not concerned with the right to com-
missions upon the income which was received by the trustees and paid
to the life tenant, as by an express stipulation that question has been
arranged by private agreement between the life tenants and the trus-
tees.

Section 2802 of the Code of Civil Procedure provides for a voluntary
accounting by trustee created by a last will and testament before a
surrogate. It provides that a surrogate before whom such an account-
ing may be had "shall allow to the trustee or trustees the same com-
pensation for his of their services, by way of commission, as are al-
lowed by law to executors or administrators, besides their just and rea-
sonable expenses therein." By section 2730 of the Code, the commis-
sions of an executor or administrator are fixed as a percentage "for
receiving and paying out all sums of money." While these sections
of the Code were the only provisions allowing or regulating com-
missions to trustees, the right to such commissions was presented to
the Court of Appeals in Phœnix v. Livingston, 101 N. Y. 451, 5 N.
E. 70, where the main portion of the trust property consisted of real
estate. In discussing whether or not the trustees were entitled to
commissions upon the real estate held by them, and considering sec-
tions 2730 and 2802 of the Code, it is said:

"Sums received and paid out are made the basis of computation. It has,
nevertheless, been held that securities received by an executor, and by him
turned over to the parties entitled, might be treated as money received
and paid out for the purpose of computing commissions. This was itself
an extension of the authority of the statute, justified by the consideration
that what was accepted as money by the parties interested might well be
treated as such for purposes of compensation. But we are asked now to take
a step further, and give a new extension to the act, which does violence to
its language, and makes land, in no just sense received or transferred, con-
structively money. * * * They were authorized to sell and to rent the real
estate. Upon all sums of money thus realized and passing through their hands
they were entitled to commissions; but the unsold lands, at the close of the
trust, passed to the possession of the remaindermen, not through any title
derived from the trustees, but by force of the original devise. The trustees
transferred no land, but simply refrained from exercising their power of
converting it into money. And so they not only never paid it out, even con-
structively, by any grant or conveyance, but never even received the absolute
fee, which all the time was a vested interest in remainder. Their estate was
simply commensurate with their trust, bounded as to duration by the terms

of the trust, and as to the unsold lands never equaling in value that of the fee. We must, therefore, adhere to the statutory basis of computation and decline to advance further in a construction which steadily departs from a plain and unambiguous enactment having a definite purpose and meaning."

In McAlphine v. Potter, 126 N. Y. 285, 27 N. E. 475, which was also under section 2730 and 2802 of the Code, the will gave to the trustees the remainder of property to hold the same in trust, with a power to lease, sell, assign, transfer, and convert the same, and collect, invest, and reinvest the proceeds thereof as they should deem best for the interests of the estate. From this income there was to be paid an annuity of $200 to a beneficiary named during her life, and the balance of the income was divided into six parts, one part to be paid to a beneficiary named during her life. In considering this question the court say:

"A further question is raised over the allowance to the executors of half commissions for receiving the funds of the estate. The law allows a specific rate for 'receiving and paying out all sums of money.' The statute indicates no division of the commissions which should apportion one-half to the receiving and the balance to the paying out, though the courts have allowed it in proper cases. But the allowance here was premature. The bulk of the estate came to the executors already invested and in the form of securities which have not been turned into money. No law justifies the allowance of one-half commissions upon their estimated value in advance of their conversion into money or its equivalent. It was proper enough to allow one-half commissions upon all sums of money received; but until the securities become sums of money, either by conversion into cash, or by their acceptance as cash by those entitled, the allowance is premature. The computation of the commission at an earlier period pays for services before they are rendered, and rests upon estimates of value which may be very different from the sums of money actually received and paid out. A time will come when the allowance may be entirely just and proper. That will be when the securities have been turned into money for the purpose of payment, or have been accepted by the legatee as cash without being converted. The allowance upon the securities was premature, and without a statutory basis and must be reversed."

That case was followed by the General Term in the First Department, affirming the report of a referee upon his opinion. The opinion is reported in Linsly v. Bogart (Sup.) 33 N. Y. Supp. 975.

This question was again presented in Matter of Johnson, 57 App. Div. 494, 67 N. Y. Supp. 1004. In that case the testator gave to his executors a certain sum of money, the income to be paid to his daughter during her life, and the court said:

"The decree of the Surrogate's Court awarded to the trustees commissions for receiving the corpus of the trust estate. In this we find no error. Commissions are usually awarded on the settlement of the accounts of executors or trustees. When the latter are managing an estate which must continue for years, it is not expected that before they can receive any compensation for their services they must wait the termination of the trust. In this case they had performed the functions of trustees for years. They had managed the trust property with thrift and good judgment. It was well invested, and was approved on an accounting by the surrogate, and it was their right to be paid for receiving this property. The commissions to be awarded upon distributing the principal of the fund must be deferred until the moneys are paid over, but the compensation for receiving is a distinctive one and has been earned. Again, it is urged that the trustees are not entitled to commissions on the securities which came from the testator and which they have not converted into cash, but have retained, as they were first-class securities.

The whole scope of the trusteeship is to keep the money invested in securities of this kind in order to bear an income, and the executors might properly be condemned if they had parted with safe mortgage investments which the testator had carefully made."

And as a result, the court held that each trustee was entitled to "one-half commissions allowed by said section for 'receiving and paying out,' and which is to be computed on the entire principal which came into their custody as trustees, keeping in view, however, the separate trust funds." There was an appeal in this case to the Court of Appeals (170 N. Y. 139, 63 N. E. 63) ; and in considering this question it was said:

"While in this case the same trustees were appointed for each of the trusts, that does not affect the meaning of the statute, which would be the same if different trustees had been selected for each trust."

And it was held that each of the respondents as trustee was not entitled to full commissions, but only to one-third thereof, but the judgment was affirmed allowing the trustees commissions upon the securities which had come into their hands, but which had not been sold by them, although the point was taken by the appellant in his brief that awarding to the trustees commissions in the proceeding was error, citing McLouth v. Hunt, supra.

In Matter of Notman, 103 App. Div. 520, 93 N. Y. Supp. 82, we held that a committee of an incompetent was entitled to one-half commissions for receiving the securities of which the estate of which he was a committee consisted, although he had not sold or disposed of those securities, but retained them in the condition in which they were at the time he received them. After considering the authorities the court said:

"We are of the opinion, therefore, that the committee of the property of an incompetent person is to be compensated for receiving and holding property which it does not become his duty to convert into cash, and that such compensation is not to be made upon the theory that these are extra services in addition to those which would be required to be performed by an executor or administrator and for which the court may make a special allowance, but upon the theory that they correspond, within the fair intent and meaning of section 2338 of the Code of Civil Procedure; with the services of an executor or administrator in converting property into cash. It follows that the committee should have been allowed one-half commissions."

After the rule had thus been settled the Legislature, in 1904, amended section 3320 of the Code by adding the following provision:

"A trustee of an express trust is entitled * * * as compensation for services as such, over and above expenses, to commissions as follows: For receiving and paying out any additional sums of principal not exceeding ten thousand dollars at the rate of two and one-half per centum. For receiving and paying out all sums of principal above eleven thousand dollars at the rate of one per centum."

Also a provision that:

"If the principal of the trust estate or fund equals or exceeds one hundred thousand dollars, each trustee is entitled to the full commission on principal and on income for each year to which a sole trustee is entitled."

And in considering this provision of the Code we should give weight to the change in phraseology between this provision and the section

of the Code awarding commissions.  In section 2730 of the Code, commissions are fixed as a percentage for receiving and paying out "sums of money"; and in Phœnix v. Livingston, and McAlphine v. Potter, supra, it was finally settled that, where specific property was received by a trustee, an allowance for commissions is premature until the property has been in some way turned into money or accepted by the remaindermen as money.  Thus, it is said:

"A time will come when the allowance may be entirely just and proper. That will be when the securities have been turned into money for the purpose of payment, or have been accepted by the legatee as cash without being converted."

With this construction of section 2730 of the Code, the Legislature passed an act which in express terms awarded to trustees commissions, and instead of using the language which had before been used in relation to executors' commissions, and which the Court of Appeals have construed so as to award commissions only when the property had been received and turned into money, or accepted by the residuary legatee as money, it provided that an executor or trustee is entitled, as compensation for services as such, over and above expenses, to commissions as follows:  "For receiving and paying out all sums of principal," etc.  "All sums of principal" would apply as well to securities in bulk as it would to money received.  The principal of the trust consists of the securities in which the trust is invested; and, whether they are turned over to the trustees in specie or money, it seems to me that in either case the trustees have received principal of the estate, and, as the section gives to a trustee commissions based upon the sum of principal, it would seem that he is entitled to one-half commissions for receiving the securities in which the estate is to remain invested immediately upon their receipt.

Considering the services that trustees render for which they are entitled to this commission, I think this provision a reasonable one. When the securities are turned over to the trustees, they must see that they are properly transferred, so as to protect the estate, and that arrangements are definitely made for the continuance of the trust. The trust then continues without further action by the trustees so far as these securities are concerned; the trustees merely receiving in the meantime the interest and turning it over to those entitled to it until the termination of the trust, when the securities have to be transferred to those entitled to them.  The mere fact that a reinvestment may be necessary during the continuance of the trust, the securities being paid off, or of its being necessary to sell them and reinvest the proceeds, would not, of course, entitle the trustees to any additional compensation; that being incident to the proper performance of the duties of the trust.  I think, therefore, that in view of what has been said in the cases before cited, under section 3320 of the Code, where specific personal property has been given to a trustee, in trust to receive the rents and profits for the benefit of a life beneficiary, and such securities are received and held by the trustees, the trustees are entitled to one-half commissions for receiving it, immediately upon the receipt of the property, out of the corpus of the estate.

The remaining question presented is whether the life beneficiary can act as trustee of this trust, so as to be entitled to commissions. The general rule is undisputed that a beneficiary of a trust cannot be at the same time a trustee; but it is also recognized that where other trust duties are devolved upon trustees than those which merely relate to the performance of trusts for the benefit of a beneficiary, the beneficiary can act as trustee for the others interested in the estate. This trust is personal property. The trustees are bound to hold it and preserve it for the benefit of those to whom it goes at the termination of the trust. There is thus an active duty imposed upon the trustees for the benefit of the remaindermen, and for their benefit the life beneficiary can act as trustee. Nor do I think that the question of the right of the life beneficiary to act as trustee is before us on this appeal. It appears that by the decree of the surrogate she was recognized as a trustee, and the trust property was turned over to her with her co-trustees, and she has performed the duties required of her as trustee. She would clearly be responsible to the remaindermen for any neglect in the performance of her duties as trustee, and is entitled to the compensation allowed for the performance of such duties. I think, therefore, that the life beneficiary is entitled to act as trustee for the benefit of the remaindermen, and as such is charged with an active duty of receiving and preserving the trust property and is entitled to commission as trustee.

The views before expressed will require a modification of this judgment, and the judgment is so modified, and, as modified, affirmed, with costs to all parties payable out of the principal of the trust. All concur.

(111 App. Div. 773)

### In re STEVENS et al.

(Supreme Court, Appellate Division, Fourth Department. March 7, 1906.)

1. TRUSTS—EXECUTION—CAPITAL AND INCOME.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, §§ 383–385.]

2. SAME—SINKING FUND—RIGHT OF REMAINDERMAN.

Where a trust estate consisted in part of certain bonds which had been purchased at a premium, and the remainderman, by investment of the capital of the trust, had derived a material benefit, consisting of a very large increase in the estate, he was not entitled to call on the life tenant to create a sinking fund from the income to make good the premium on the bonds which wore away as the bonds matured.