## DOSCHER v. WYCKOFF et al.

(Supreme Court, Special Term, Kings County.　October 16, 1908.)

1. WILLS (§ 672*)—CONSTRUCTION—TRUSTS—VALIDITY.

Testator gave to his wife in lieu of dower, the income of his estate, and provided that, on her remarriage or death, the property should go to his children. He gave all his property to his wife, appointed executrix, and to his brother, appointed executor, in trust for the payment of the legacies specified, with power to sell any part of the real estate devised. *Held* to create a valid trust, and the executrix and executor held the property in trust, until the death or remarriage of the wife, paying to her the profits of the estate.

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 672.*]

2. TRUSTS (§ 242*) — SALE OF TRUST PROPERTY—EXECUTION OF POWER OF SALE BY TRUSTEE—VALIDITY.

Testator gave to his wife the income of his estate, and provided that on her death or remarriage the property should go to his children. He gave all his property to his wife, appointed executrix, and to his brother, appointed executor, in trust to pay the legacies specified, with power to sell. Land devised was unimproved and vacant. The wife and brother qualified. Subsequently the brother died, and the wife, as sole surviving executrix and trustee, conveyed the land in fee. *Held*, that the conveyance was valid, the wife not being trustee and beneficiary of the identical interest, and it being her duty to preserve the estate for the benefit of those entitled to it at the termination of the trust.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 242.*]

3. TRUSTS (§ 287*)—EXECUTION OF TRUST BY TRUSTEE—AIDING DEFECTIVE EXECUTION.

Where a valid trust exists, and an attempt has been lawfully made in good faith to carry out its provisions, those relying on the act of the trustees may invoke the aid of equity to supply defects.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 407; Dec. Dig. § 287.*]

4. EQUITY (§ 57*)—MAXIMS—APPLICATION.

Equity looks on that as done which ought to be done, and, for the purpose of reaching justice, equity will consider that parties have performed the duties which they ought to fulfill; and, when it interposes to compel the performance of an act which has been covenanted to be performed, it treats the subject as if it had been performed at the time contracted.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 179; Dec. Dig. § 57.*]

5. TRUSTS (§ 203*)—SALE OF TRUST PROPERTY—EXECUTION OF POWER OF SALE BY TRUSTEE—RELIEF IN CASE OF DEFECTIVE EXECUTION—BONA FIDE PURCHASERS.

Testator gave to his wife the income of his real and personal estate, and provided that, on her death or remarriage, the property should be divided between his children. He gave all his property to his wife, appointed executrix, and to his brother, appointed executor, in trust to pay the legacies provided for, with power to sell. Testator died leaving his wife

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and a·son surviving. Land devised was unimproved and· vacant. The wife as sole surviving executrix and trustee conveyed the land in fee. The conveyance was made in good faith for a valuable consideration. The wife and son enjoyed the result of the conveyance for 17 years. *Held*, that equity would regard the conveyance as a valid execution of the power in trust, and Real Property Law (Laws˙1896, p. 584, c. 547) § 160, providing that a purchaser for a valuable consideration claiming under a defective execution of power is entitled to the same relief as a similar purchaser claiming under a defective conveyance from the actual owner, would be invoked for the protection of bona fide purchasers.

[Ed: Note.—For other cases, see Trusts, Dec. Dig. § 203.*]

**6.** TRUSTS (§ 203*)—BONA FIDE PURCHASERS—ESTOPPEL.

The surviving trustee in a testamentary trust, conferring on the trustees power to sell real estate, conveyed real estate in good faith. The surviving trustee, who was a beneficiary for life, and the other beneficiary in the trust, enjoyed the result of the conveyance for 17 years without attacking its validity. Third persons became bona fide purchasers and made extensive improvements. *Held*, that the surviving trustee and the beneficiary were in their individual capacity estopped from questioning the validity of the conveyance.

[Ed. Note.—For other cases, see Trusts, Dec. Dig. § 203.*]

**7.** WILLS (§ 634*)—CONSTRUCTION—ESTATES DEVISED—VESTED REMAINDERS.

Testator gave to his wife the income of his real and personal estate, and provided that, on her death or remarriage, the property should go to his children. He gave all his property to his executors in trust to pay the legacies specified, with power to sell. *Held*, that under Real Property Law (Laws 1896, p. 564, c. 547) § 30, providing that if there is a person in being who would have an immediate right to the possession of the land, on the ceasing of the precedent estate, the future estate is vested, the only child of testator became seised of a vested remainder at testator's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

**8.** WILLS (§ 634*)—CONSTRUCTION—ESTATES DEVISED—VESTED· REMAINDERS.

Where the court can point to a person and say to him that by virtue of a testamentary grant in remainder he will have an immediate right to the possession of lands devised on the precedent estate of another ceasing, such person has a vested remainder, under Real Property Law (Laws 1896, p. 564, c. 547) § 30, providing that future estates are vested where there is a person in being who would have an immediate right to the possession of the land on the ceasing of the precedent estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1491; Dec. Dig. § 634.*]

**9.** WILLS (§ 629*)—CONSTRUCTION—ESTATES DEVISED—VESTED REMAINDERS.

A remainder created by a will will not be considered as contingent, where it may fairly be construed to be vested, since the law favors the vesting of estates, and favors such a construction of the will as will avoid the disinheritance of remaindermen who may die before the termination of the precedent estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 1462; Dec. Dig. § 629.*]

**10.** WILLS (§ 439*)—CONSTRUCTION—INTENT OF TESTATOR.

The intention of the testator is the paramount rule for the construction of his will, and most of the other rules are aids to the discovery and application of such intention.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 955; Dec. Dig. § 439.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**11. WILLS (§ 634*)—CONSTRUCTION—ESTATES DEVISED—REMAINDERS.**

Testator gave to his wife the income of his real and personal estate, and provided that on her death or remarriage the property should go to his children. He gave all his property to executors in trust for the payment of the legacies specified, with power to sell. *Held* to give an estate in remainder after the wife's death or remarriage to testator's children living at his death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

**12. PARTIES (§ 23*)—DEFENDANTS—SUING ONE OR MORE ON BEHALF OF ALL INTERESTED.**

Where an estate is vested in persons living, subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate represent the whole estate for purposes of any litigation in reference thereto.

[Ed. Note.—For other cases, see Parties, Dec. Dig. § 23.*]

**13. QUIETING TITLE (§ 52*)—DETERMINATION OF ADVERSE CLAIMS—JUDGMENT—PERSONS BARRED.**

Testator gave to his wife the income of his real and personal estate, and provided that, on her death or remarriage, the same should go to his children. He gave all his property to his wife, appointed executrix, and to his brother, appointed executor, in trust for the payment of the legacies specified, with power to sell. The wife and brother qualified. Subsequently the brother died, and the wife, as sole surviving executrix and trustee, conveyed the land devised. For over 17 years, she and testator's son surviving him enjoyed the benefits of the conveyance, and third persons became bona fide purchasers of the premises and made extensive improvements thereon. *Held* that, in a suit by a purchaser against the wife and the son for determination of their claims to the property, the court could establish the validity of the wife's conveyance and bar the wife and the son and those claiming under them, as authorized by Code Civ. Proc. § 1645, providing that final judgment for plaintiff in such an action must be that defendant, and every person claiming under him, etc., be barred.

[Ed. Note.—For other cases, see Quieting Title, Dec. Dig. § 52.*]

Action to establish a deed and to determine adverse claims to real estate by Claus Doscher against Maria Wyckoff, individually and as surviving executrix and trustee of Henry L. Wyckoff, deceased, and another. Judgment for plaintiff.

Henry F. Cochrane, for plaintiff.

Mayer, McLeer & Dobson (W. E. C. Mayer, of counsel), for defendants.

KELLY, J. On May 1, 1890, the defendant Maria Wyckoff, as the sole surviving executrix and trustee under the will of her deceased husband, Henry L. Wyckoff, executed and delivered to Edward F. Linton a deed reciting the power and authority given to her by the will, and conveying five undivided sixteenths of a tract of land in East New York, part of the real estate of which Ferdinand L. Wyckoff died seised. The consideration was $54,062.50. At the same time the owners of the remaining eleven-sixteenths of the property, together with Sarah Wyckoff, who owned a life estate in all the land, conveyed their interest to Mr. Linton, the transaction having been brought about by a contract in which all the owners, including

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the life tenant, agreed to sell. The price paid to Maria Wyckoff, as surviving executrix and trustee for the five-sixteenths interest, is conceded to have been fair and reasonable. The property was farm land and unproductive. The farm originally belonged to Ferdinand Wyckoff, the father of Henry L. Wyckoff. He died leaving a widow, Sarah, and several children, among whom was Henry L. Wyckoff. The property of Ferdinand was never divided, and it was subject to a life estate given to his widow. Henry Wyckoff's share in the property was five-sixteenths. He died in 1879 before his mother, leaving him surviving his widow, the defendant Maria Wyckoff, and his son, the defendant Abraham Wyckoff, then nine years of age. He left a will, which was duly admitted to probate, as follows:

"I, Henry L. Wyckoff, of the town of New Lots in the County of Kings and State of New York, do make, publish and declare my last will and testament to be as follows: First: I give to my wife, Maria Wyckoff in lieu of dower, the use and income of all my real and personal property to be paid to her by my executors so long as she shall remain my widow.

"Second.—On the death or remarriage of my wife, I give all my property real and personal which I may own, or be entitled to or interested in at my decease in equal portions to my children then living and the issue of such as may have died, such issue to take the share the parent would take if living.

"Third.—I give and devise all my real and personal estate of whatever nature or kind to my wife, Maria Wyckoff, the executrix and to my brother, Jacob S. Wyckoff, the executor of this my last will and testament hereinafter nominated and appointed in trust for the payment of my just debts and the legacies hereinbefore specified with full, absolute and complete power and authority to such of them as may qualify and to the survivor of them to grant, sell, convey mortgage, lease or exchange, all or any parts of my real estate, at public or private sale at such time or times and upon such terms and in such manner as to them shall seem meet.

"Lastly.—I do hereby nominate and appoint my wife, Maria Wyckoff, to be the executrix and my brother, Jacob S. Wyckoff, to be the executor of this my last will and testament hereby revoking all former wills by me made.

"In witness whereof, I the said Henry L. Wyckoff have hereunto set my hand and seal this 10th day of February A. D. one thousand eight hundred and seventy four. Henry L. Wyckoff. [L. S.]"

Mrs. Wyckoff and her coexecutor, Jacob S. Wyckoff, qualified and entered upon the performance of their duties. Three years afterward Jacob died. Thereafter, and up to the present day, Mrs. Wyckoff has been the sole surviving executrix and trustee under the will, and she has acted in all matters concerning the estate and its administration. The land, as already stated, was farm land, unimproved and producing no income, and, in addition, there was a life estate between Mrs. Wyckoff and any enjoyment of income, had there been any. She testified that at first she did not want to sell, but later she concluded to do so, because, she says, "I will get something from it that I might not be able, living for a long time, to get anything, and they couldn't sell unless I signed off." The consideration was paid, so far as the estate of Henry Wyckoff was concerned, by a check for $4,962.50, and the execution and delivery of a purchase-money mortgage for $50,000, due in 10 years, with provision for the release of lots to be made from time to time as the same were sold, on receiving payments on account. In 1890, when the conveyance was made, her son, the defendant Abraham Wyckoff, was about 20 years of age. He lived

with her, and they were both familiar with the property and with its subsequent development. Linton and his associates inaugurated a scheme for the improvement and development of the property on a large scale. Commencing in 1890, they began to lay out the land in lots, opening streets, erecting buildings, etc. Lots were sold, and the grantees built dwelling houses. A new settlement was established, which has grown to a large and important part of the borough. The land was conveyed by Linton and his associates to the German American Improvement Company. The company continued the development of the territory, and in 1901 conveyed the lots remaining unsold to the plaintiff. At that time there remained about 427 lots. Since 1901 the plaintiff has sold 200 of these lots. One hundred and eighty of the 200 lots thus sold have been built upon and improved by the grantees. Plaintiff himself has erected 54 houses which he still owns. The value of the buildings and improvements on the property, exclusive of the land, is over $1,000,000. There are outstanding mortgages, covering land and buildings, aggregating $1,700,000. Since the sale of the property to Linton in 1890, there have been erected upon the property 371 small houses, most of them owned by individuals of small means. All of these properties are affected by this suit, the owners having purchased on the faith of the deed made by Maria Wyckoff, as executrix and trustee, in 1890. From time to time, as lots were sold, Mrs. Wyckoff, as executrix and trustee, executed releases to the purchasers, receiving on account some $16,000. These releases were executed with the full knowledge of her son, the defendant Abraham Wyckoff. He collected the interest on the mortgage down to the date when the balance of principal, $33,400, with $835 interest, was paid by check to Mrs. Wyckoff, as executrix. She indorsed the check over to her son, who deposited the money to his credit in the Brooklyn Trust Company. Out of this fund he paid $18,000, arrears of taxes on his father's estate; he invested about $4,000 in stocks for the account of the estate; the balance he retained. No claim was ever made by the mother or son against the property, and they concede that it was the intention to sell the entire interest of the Wyckoff estate to Linton. It was always regarded as an accomplished fact until December, 1906, some 17 years after the delivery of the deed to Linton. At that time, one Charles Alt, who had purchased a lot, endeavored to obtain a quitclaim deed from Abraham Wyckoff. He was refused, and shortly afterwards the son called on plaintiff and told him that he had better not sell any more property. This was the first intimation that the defendants, mother and son, asserted any claim against the real estate adverse to plaintiff's title. They now assert that the deed of 1890 was void. They claim that the property is still owned by the estate of Henry Wyckoff. Mrs. Wyckoff offers to account for the money paid to her "less the value of her life estate," which she says is all that she transferred by the deed. This claim, with the resulting ruin brought upon so many innocent people, is based upon the averment that the trust created by the will of Henry Wyckoff could not be carried out by a deed executed by Maria Wyckoff as surviving trustee. With her son, Mrs. Wyckoff asserts that she was the sole bene-

ficiary under the trust during her life or widowhood, and that she could not act at the same time as sole trustee to convey the title.

On the facts in this case, as disclosed by the evidence, the conceded good faith of the transaction, the sufficiency of the price paid for the land, the acquiescence of the defendants in the results obtained for 17 years, their personal knowledge of the development of the property and the expenditure of money thereon, their knowledge of the circumstances under which the present owners, principally industrious and saving people of moderate means, have established their homes on the land, on the faith of the will of Henry L. Wyckoff and the action of his trustees, and having the consequences of the success of the defendants' demand in view and the ruin it would cause to an innocent community, it would be very unfortunate if a court of equity and good conscience is powerless to prevent such a result. I think the defendants cannot obtain such an unjust profit. In the first place, I think a valid trust was created by the will of Henry L. Wyckoff, and that the property is devised to the executors to hold the same until the death or remarriage of the widow, paying her the rents and profits. I do not agree with the plaintiff that the deed is invalid, or that the will creates simply a "power in trust." It is true that the devise is not directly to trustees as such, and that the testator uses the language, "I give to my wife, Maria Wyckoff, in lieu of dower, the use and income of all my real and personal property," but this is followed by, "so long as she shall remain my widow." It is apparent that the testator intended that the executors, as trustees, should be empowered to receive the rents and profits, and it is equally apparent that the remainder goes to persons other than the beneficiary of the life estate. It is not only convenient and advantageous, but it is the clear intention of the testator, that the executors, as trustees, should be empowered to manage the property during the life of the widow or until her remarriage, preserving it for the remaindermen. And there is a direct devise of the estate to the executors in the third paragraph of the will in trust. The devise is not open to the objection that it is a "passive trust," as was the case in Jacoby v. Jacoby, 188 N. Y. 124, 80 N. E. 676. The beneficiary, during the life estate, is not the remainderman, and in the case at bar the trust estate is devised to two trustees, not the widow alone. The cases cited by the learned counsel for the plaintiff (Kinnier v. Rogers, 42 N. Y. 531; Denison v. Denison, 103 App. Div. 528, 86 N. Y. Supp. 604, 93 N. Y. Supp. 1128; Downing v. Marshall, 23 N. Y. 380, 80 Am. Dec. 290; Clift v. Moses, 116 N. Y. 144, 22 N. E. 393) are distinguishable from the case at bar for the reasons above referred to. In my opinion this is not a "power in trust," but a valid trust recognized by the statute (Real Property Law [Laws 1896, p. 571, c. 547] § 76, subd. 3), and coupled with a power (Robert v. Corning, 89 N. Y. 237; Steinhardt v. Cunningham, 130 N. Y. 292, 29 N. E. 100). The deed executed by the widow, as sole surviving executrix and trustee, on May 1, 1890, was, in my opinion, valid, and conveyed the fee title to the premises therein described.

The defendants take the position that upon the death of her co-trustee, Maria Wyckoff remained alone as trustee and sole beneficiary of the same identical interest, and that she was not a competent trustee who could execute the trust contained in the will of the decedent. They assert that the execution of the deed by her was a total non-execution of the power of sale contained in the will as part of the trust, and they say the deed to Linton was absolutely void. The defendants rely upon the cases of Woodward v. James, 115 N. Y. 346, 22 N. E. 150, Haendle v. Stewart, 84 App. Div. 274, 82 N. Y. Supp. 823, and similar cases holding that the same person cannot be, at the same time, trustee and beneficiary of the same identical interest. The complaint is also framed upon the theory of the invalidity of the deed of 1890, but plaintiff does not agree that there was a nonexecution of the trust. But I think the answer to this contention is that Mrs.' Wyckoff was not trustee and beneficiary of the same identical interest. She was beneficiary, as far as the trust estate produced any income or profit. But we know, from the evidence, that it was unimproved, vacant land producing no income. As trustee she was vested with the control and management of the land, with power "to grant, sell, convey, mortgage, lease or exchange all or any part or parts of the real estate," not alone for her own benefit, because her personal interest in nonproductive property was small, but to preserve the corpus of the estate for the remainderman. This was her duty, and in carrying out the intention of the testator, it was no less important than the provisions made for her own benefit, and she was bound to hold the property and preserve it for the benefit of those to whom it went at the termination of the trust. Robertson v. De Brulatour, 111 App. Div. 901, 902, 98 N. Y. Supp. 15. In Woodward v. James, and Haendle v. Stewart, supra, the trustee was the sole beneficiary. In Haendle v. Stewart, the remainder was given to the surviving children of the testator, but Mr. Justice Ingraham says, at page 277 of 84 App. Div., page 825 of 82 N. Y. Supp., "There is no statement in the submission as to whether the testator left children surviving." And in that case, the testator having appointed two trustees, one of them declined to act and never qualified, so that there never was an individual trustee who was not interested as beneficiary. In Woodward v. James, the decision was that, "where the trustee is made beneficiary of the same estate, both in respect to its quality and quantity, the inevitable result is that the equitable is merged in the legal estate, and the latter alone remains." But in that case, the Court of Appeals held that the disability only applied to one-half of the income, and expressly states:

"It does not follow that her trust estate in the corpus of the property is in any manner destroyed, or that there is any less a necessity for its existence. She can be trustee for the heirs, and that trust ranges over the whole estate for the purpose of its management and disposition."

In the case at bar, it could never be said that Mrs. Wyckoff's equitable estate was merged in the legal estate. What legal estate? There is a marked difference between the estate in remainder, devised to the child of the testator, and the beneficial interest in the income devised

to the widow. The quality and quantity of the two interests are essentially different. The proof shows that the estate devised produced no income up to the date of the conveyance. In fact, the entire property was in possession of her mother-in-law, as life tenant. Suppose that some part of this unimproved farm land in East New York had been built upon, and that the rent and income was derived by Maria Wyckoff from such portion of the estate; would the trust relate only to that part of the property? Was the trustee without duty or responsibility to the remainderman as to the balance of the land? Certainly not. Robertson v. De Brulatour, supra. And so in this case, we have a trust valid in its inception from any point of view, because Mrs. Wyckoff was not appointed sole trustee, and her co-trustee accepted the trust, qualified, and acted as trustee for three years and until his death; and the surviving trustee, Mrs. Wyckoff, was not trustee for herself alone, and her individual equitable interest was entirely different as to quality and quantity from the legal estate. I think that this case differs from Woodward v. James and Haendle v. Stewart, and that the deed made by Mrs. Wyckoff, as surviving trustee, was valid, and conveyed the title to the five-sixteenths of the property therein described. There is no reason for extending the doctrine enunciated in Woodward v. James to cases not within the reasoning in the opinion, or so as to accomplish wrong or injustice.

But in addition to the confirmation of his title conveyed by the deed, the plaintiff asks a judgment determining the invalidity of the claims asserted by the defendants, and barring them, and those claiming under them, from interest in the property. While such adjudication is not necessary to the decision that the deed of 1890 was a valid execution of the power granted to the trustees in the will, still, in view of the character and extent of the property affected, the diversity of ownership, the large amount involved, and the importance of settling this title, not only as to the defendants, but as to those claiming under them, whether unborn children or heirs at law, I think it is proper to inquire whether equity can grant such a judgment in this action and whether such judgment will be effective.

If it may be asserted that, as to any part of the corpus of the estate devised, the interests of the trustee were identical, or that the failure on the part of the surviving trustee to apply for the appointment of a successor to her deceased co-trustee in any way invalidates the conveyance, assertions which, I think, cannot be sustained, this case calls for the interposition of a court of equity to see that "that is done which ought to be done." The bona fides of the transaction is not questioned. The defendants, mother and son, have remained silent for 17 years, enjoying the results of the conveyance, using the money, and practically aiding and inviting innocent investors to rely on their deed by their continued releases to individual purchasers. The total outlay, and the wonderful development in that part of the borough of Brooklyn, brings the total investment made on the faith of the trustee's action in 1890 to over $2,000,000. The disaster and ruin which would result to hundreds of innocent people if defendants are to succeed in disavowing the deed of 1890 is inconceivable. If a court of

equity is powerless to afford the plaintiff relief under the circumstances in this case, there is something radically deficient in our system of jurisprudence. Equity should certainly be able to see to it that trusts, which are its especial care, are not a means for perpetrating wrong and injustice without adequate remedy, and that where a valid trust exists and an attempt has been lawfully made, in good faith, to carry out its provisions, those who have relied upon the act of the trustees may invoke the same elementary principles of right and justice which are applicable to all men, whether acting as trustees or individuals. The Master of the Rolls says in Chapman v. Gibson, cited, 1 Leading Cases in Equity (3d Am. Ed.) 285:

"I have looked at all the cases I can to find on what principle this court goes in supplying a defect and altering the legal right. It is this: Whenever a man having a power over an estate, whether ownership or not, in discharge of moral or natural obligations, shows an intention to execute such power, the court will operate upon the conscience of the heir to make him perfect this intention."

In Robert's Widow v. Stanton, 2 Munf. 129, 138, 139, 5 Am. Dec. 463, one of the Virginia cases in the early part of the last century, the decision as given in the headnote is:

"Where one trustee only had conveyed under a power required to be executed by all, Tucker, J., was of opinion that, as there was a want of competency in the person acting to execute the trust except in connection with the other, it was not a case in which chancery would relieve on the ground of aiding the defective execution of a power, but Fleming, J., considered it was a case in which a power had been imperfectly executed, and that, in favor of a purchaser for a valuable consideration, equity would supply the defect, and the latter view appears to be correct."

Judge Story says:

"In no case will equity interfere where there has been a nonexecution of a power as contradistinguished from a trust, for if a trust be coupled with a power, there the trust will be enforced, notwithstanding the force of the power does not execute it. But if there be a defective execution or attempt at execution of a mere power, there equity will interfere and supply the defect, not universally indeed, but in favor of parties for whom the person intrusted with the execution of the power is under a moral or legal obligation to provide by an execution of the power. Thus such a defective execution will be aided in favor of persons standing upon a valuable or meritorious consideration, such as a bona fide purchaser for value. * * * Where a party undertakes to execute a power, but, by mistake, does it imperfectly, equity will interfere to carry his very intentions into effect, and that, too, in favor of those who are peculiarly within its protective favor, such as purchasers for value always are." 1 Story, Equity Jurisprudence, 184.

To the same effect are the cases cited in 2 Pomeroy, Equity Jurisprudence, § 589. And Bispham says:

"Equity looks upon that as done which ought to be done. For the purpose of reaching exact justice, equity will consider that parties have performed certain duties which they ought in justice to fulfill. When chancery interposes to compel performance of an act which has been covenanted to be performed, it always treats the subject as if it had been performed at the time contracted. The act which chancery desires to be done is the same act as would have existed had it been done when it was agreed to be done." Bispham's Equity, 70.

I think that, if necessary, equity would take upon itself the execution of this trust, if it had not been already executed, and that the ob-

jection of the defendants that equity could only act as of the present day, and could not carry out the contract of the parties on the basis of valuations and conditions as they existed in 1890, is without force. To limit the power of the court in that way would be to say it was without power. That equity has such power is clearly intimated by the Court of Appeals in Losey v. Stanley, 147 N. Y. 560, 42 N. E. 8, and in Rankine v. Metzger, 69 App. Div. 264, 74 N. Y. Supp. 649. If the defendant's contentions were correct, and the trust failed in 1890 by reason of the identity of the legal and equitable estates, with which contentions I in no way agree, I think that equity would regard the deed of the surviving executor and trustee as the execution of a power in trust, and that the provisions of the Real Property Law (Laws 1896, p. 584, c. 547) § 160, for the protection of purchasers for valuable consideration, would be invoked by plaintiff.

Again, as between the plaintiff and the defendants in their individual capacity, the strongest equities favor the plaintiff. Certainly they are estopped as individuals from questioning the validity of the conveyance. And I think they represent not only themselves, but those that come after them as well. I think Abraham Wyckoff became seised of a vested remainder in this property at the time of his father's death. The statute provides that future estates are vested "where there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate." They are contingent while the person to whom, or the event upon which, they are limited to take effect, remains uncertain. Real Property Law (Laws 1896, p. 564, c. 547) § 30. Abraham Wyckoff was living at the date of his father's death, and "the conditions of the test as to the vesting of a future estate in remainder, were satisfied, inasmuch as there was an absolute gift to designated persons then in existence, upon the termination of a precedent estate which might only be defeated by the happening of a contingency provided for in the will. The contingency did not affect the vesting of the interest given. It was a possible event provided for by the testator which should operate to divest those interests. It was not a gift limited to take effect upon an uncertain event. It was a gift which the uncertain event might chance to defeat." Stringer v. Young, 191 N. Y. 157, 83 N. E. 690.

The Court of Appeals in the Stringer Case affirmed a decision of the Appellate Division in this department (Stringer v. Barker, 110 App. Div. 37, 96 N. Y. Supp. 1052) in which Mr. Justice Jenks, writing for the court, cites Moore v. Littel, 41 N. Y. 66–76, where Judge Woodruff said of the statute (1 Rev. St. [1st Ed.] p. 722 et seq. pt. 2, c. 1, tit. 2) which has been revised in the provisions of the real property law:

"I read this language in its ordinary and natural signification, and if you can point to a human being and say as to him, 'That man or woman, by virtue of a grant in remainder, would have an immediate right to the possession of certain lands if the precedent estate of another therein should now cease,' then the statute says he or she has a vested remainder."

If we test Abraham Wyckoff's interest by these standards, I think it is apparent that he has a vested remainder in the estate divided by the will of his father.

Mr. Justice Gaynor said in People's Trust Company v. Flynn, 44 Misc. Rep. 6, 89 N. Y. Supp. 706, that the decisions of our highest court on this subject vary, but that the idea seems to be to do justice in each case. And when, after many vicissitudes, this Flynn Case reached the Court of Appeals (188 N. Y. 385, 80 N. E. 1098), the court decided that, under the will in that case, the corpus vested in the trustees until the death of the life tenants, and that the gift was to take effect in futuro and not in præsenti. The learned counsel for the defendants in the case at bar cites the Flynn Case as decisive against the contention that Abraham Wyckoff takes a vested remainder under his father's will. If he does not take a vested remainder, the estate may pass to collaterals. His mother is advanced in years. He is some 37 years of age; he has been married 5 years, and has no children.

What was the intention of the testator? On his death the legal and equitable title and the beneficial interest vested in some one. The will was made in 1874. At that time the testator had one son, the defendant Abraham Wyckoff, about 4 years of age, and he had no other children at the date of his death in 1879. Did he intend to disinherit his only child? The second clause of the will reads:

"On the death or remarriage of my wife, I give all my property, real and personal, which I may own or be entitled to or interested in at my decease, in equal portions, to my children then living and the issue of such as may have died, such issue to take the share the parent would take, if living."

And he gives his property to his executors in trust for the payment of his debts "and the legacies hereinbefore specified." The only "legacies" were the use and income devised to the wife and the remainder to the children.

Why should we construe this will as indicating an intention to disinherit the only son, then 4 years of age? The cases are not in harmony, but, applying the general principles and rules on construction, a remainder is not to be considered as contingent in any case where it may fairly be construed to be vested, since the law favors the vesting of estates. The law favors such a construction of a will as will avoid the disinheritance of remaindermen who may happen to die before the determination of the precedent estate. "The intention is the paramount rule of construction. Most of the other rules are aids to the discovery of the testator's intention and the application of it." Dougherty v. Thompson, 167 N. Y., at page 483, 60 N. E., at page 763. In Connelly v. O'Brien, 166 N. Y. 406, 60 N. E. 20, the language was:

"I give all my estate, real and personal, after the payment of my debts, to my wife Rose during her life and then to such of my children as may then be alive, share and share alike."

In that case it was held that the children had a vested remainder.

I think the intention of the testator was to give the estate in remainder, after his wife's death or remarriage, to his children living at the time of his decease.

If the mother, as the life beneficiary, and the son, as the owner of a vested remainder, are before the court, I think the contingency of

the death of Abraham Wyckoff before his mother, or the contingent rights of unborn children or heirs at law, do not stand in the way of a decree barring the defendants and those parties who may hereafter have some interest from claim to this property. "When an estate is vested in persons living, subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand not only for themselves, but also for the persons unborn. This is a rule of convenience, and also of necessity." Earl, Chief Justice, in Kent v. Church of St. Michael, 136 N. Y., at page 17, 32 N. E., at page 704 (18 L. R. A. 331, 32 Am. St. Rep. 693). It appears, therefore, that the court may, in this action, dispose of the whole matter, and by appropriate decree determine that the claims advanced by the defendants against the property conveyed by the trustee in 1890 to Linton are unlawful and invalid, and that the deed then given was valid and effectual to transfer the title to the property therein described, and that the judgment will bind, not only the mother and the son, but all others who may be interested, unborn children and next of kin.

I therefore direct judgment for the plaintiff establishing the validity of the deed of May 1, 1890, and forever barring the defendants and those claiming under them from all claim to any interest in the property, of any kind or nature whatsoever (Code Civ. Proc. § 1645), together with the costs of this action.