PARMELY et ux. v. SHOWDY.

(Supreme Court, Equity Term, Oneida County.   July 10, 1914.)

1. LANDLORD AND TENANT (§ 30*)—LEASE—VALIDITY.
    An agreement under which certain persons were to care for, support, and maintain the owner of a farm during his lifetime upon the farm, and as consideration therefor to have the use of the place for 25 years, was not void under Const. art. 1, § 13, providing that "no lease or grant of agricultural land for a period longer than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid"; the maintenance of the grantor not being a reservation of rent or service within the prohibition.
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 86, 87; Dec. Dig. § 30.*]

2. EVIDENCE (§ 461*)—PAROL—CONTRACTS.
    In an action to determine the rights under a lease to which defendant was not a party, parol evidence was admissible to show the prior negotiations and surrounding circumstances to arrive at the intention of the parties in executing the lease.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2129-2133; Dec. Dig. § 461.*]

3. LANDLORD AND TENANT (§ 3*)—LEASE—VALIDITY—"RESERVATION OF RENT" —"SERVICE."
    Within Const. art. 1, § 13, providing that "no lease or grant of agricultural land for a period longer than twelve years, hereafter made in which shall be reserved any rent or service of any kind, shall be valid," "reservation of rent," means a reservation of something issuing out of the land itself in actual payment for its use, and "service" means what is known as rent service at common law.
    [Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 3.*
    For other definitions, see Words and Phrases, vol. 7, pp. 6430-6433.]

4. ESTOPPEL (§ 83*)—ESTOPPEL BY CONDUCT—VALIDITY OF LEASE.
    Where, in an action to determine the rights of plaintiffs under an agreement that they should care for defendant's father during his lifetime, and as consideration therefor have the use of his farm for 25 years, it appeared that defendant negotiated the agreement, procured his father to sign the same, and thereafter, when plaintiffs became doubtful as to the validity of the agreement and threatened to leave the place, induced them to carry out their part by stating that he thought the lease was valid, he was estopped to set up that it was invalid because in violation of Const. art. 1, § 13, limiting the right to lease premises for more than 12 years.
    [Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 218, 227-229; Dec. Dig. § 83.*]

5. ESTOPPEL (§ 52*)—NATURE OF DOCTRINE.
    The essence of the doctrine of estoppel is that where a person does or omits to do something which influences the action of another, who relies and acts thereon, equity will not permit him to controvert the same to the injury of the other party.
    [Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 121-125, 127; Dec. Dig. § 52.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. QUIETING TITLE (§ 22*)—RIGHT OF ACTION.

Where plaintiffs were induced by defendant to enter into and perform a contract with his father, that they should care for the father during his lifetime and receive as consideration therefor the use of his farm for 25 years, and where thereafter defendant secured a deed to the farm which made no mention of this agreement, and then after his father's death demanded rent and denied plaintiffs' rights under the agreement, plaintiffs were entitled, under' Code Civ. Proc. § 1638, to sue to quiet their title under the lease.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 54; Dec. Dig. § 22.*]

7. QUIETING TITLE (§ 34*)—COMPLAINT TO RELIEF.

That the complaint, in an action to determine the rights of plaintiffs to the use of a farm for 25 years, pursuant to an agreement, contained allegations not pertinent to a suit to quiet title under Code Civ. Proc. § 1638, did not preclude them from having their title quieted, where enough was stated to give the court jurisdiction under such statute. .

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 69, 71, 72, 76, 77; Dec. Dig. § 34.*]

8. QUIETING TITLE (§ 35*)—COMPLAINT—SUFFICIENCY.

A complaint was sufficient as a complaint in a suit to quiet title under Code Civ. Proc. § 1639, though it did not expressly allege that plaintiffs were in possession when the action was commenced, where such fact must necessarily be inferred from the allegations made.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 73, 74; Dec. Dig. § 35.*]

9. QUIETING TITLE '(§ 54*)—PROCEEDINGS—COSTS.

Where, in a suit to quiet plaintiffs' title under an agreement entitling them to the use of a farm for 25 years, the court finds for plaintiffs, and it appears that defendant's conduct has been inequitable, costs will be taxed against defendant.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. § 105; Dec. Dig. § 54.*]

Action by William Parmely and wife against Smith E. Showdy, to adjudge plaintiffs' rights in certain real estate and for equitable relief. Decree for plaintiffs.

M. H. Powers, of Rome, for plaintiffs.
R. J. Fish, of Oneida, for defendant.

EMERSON, J. The plaintiffs bring this action for equitable relief based on the following facts: In the year 1910 one William H. Showdy, who was the father of defendant, was the owner of a farm of about 23 acres of land in the town of Verona, Oneida county. This property was worth not to exceed $1,000, and said William H. Showdy, who was a man then 74 years of age, lived alone upon the farm. He was taken sick with pneumonia, and at the defendant's request the plaintiff, Minnie Parmely, who is the wife of the other plaintiff, went to his place for the purpose of giving him care and attention. It was soon thereafter agreed between the parties that the plaintiffs should move upon the premises and care for said William H. Showdy as long as he should live in consideration of the use of the farm for a series of years, and to that end the defendant, who was a justice of the peace, on March 23, 1910, drew up a paper, in form a lease, which recited

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that in consideration of the rents and covenants therein contained said William H. Showdy demised and leased said premises to the plaintiffs for the term of 25 years, the plaintiffs covenanting to pay for the use of said premises and for the rent thereof the board of said William H. Showdy, and to furnish him food, wash and mend his clothes, care for him when ill, and to permit him to live on the premises as one of the family as long as he should live, and, as a part of the consideration of the lease, also to keep line fences in repair during said term, also to pay all taxes that should be assessed during said term after the decease of said William H. Showdy, and to keep the house insured for $300, loss, if any, payable to the defendant. The paper further provided that the lease should not be sublet unless consented to by both parties, that if the plaintiffs failed to pay such rent or any part when it fell due, said William H. Showdy might sue therefor or re-enter said premises or resort to any legal remedy, and that at the expiration of said term said plaintiffs would surrender up said premises to said William H. Showdy in as good condition as they were at the time plaintiffs took possession, natural wear and damages by the tenants excepted. The defendant prepared this paper by filling up the blank form of a lease without any suggestions from plaintiffs as to the form of such agreement. He then procured his father to sign it, and it was then signed by the plaintiffs and witnessed by defendant. The plaintiffs thereupon moved upon the premises and cared for, supported, and maintained said William H. Showdy until his death on October 6, 1912. Following the execution of the agreement aforesaid, and on April 5, 1910, the defendant procured a deed from said William H. Showdy to himself of said real estate for a nominal consideration, which deed contained no reference whatever to said lease or agreement and was acknowledged before the defendant himself as a justice of the peace, but was not recorded until after the death of said William H. Showdy, and on January 9, 1913. Thereafter, and on May 26, 1913, the defendant served a notice in writing on the plaintiffs, which stated that he was the owner of said land, and that he forbid them to cut any hay or grass thereon unless they paid him $50 on or before June 20, 1913, and also stated that, unless after July 1, 1913, they paid him the monthly rent of $6.25 in advance, they were notified to vacate and surrender up said premises to said defendant. Thereupon this action was commenced by the plaintiffs.

[1, 2] The defendant now urges that the written agreement which the parties executed constituted a lease or grant of agricultural land for a longer period than 12 years, and was therefore void under section 13, art. 1, of the state Constitution. I do not think this contention is well founded. The defendant was not a party to the lease, and it is therefore permissible to refer to the previous negotiations and surrounding circumstances to arrive at the meaning and intention of the parties and the actual agreement that they made. Hankinson v. Vantine, 152 N. Y. 21, 30, 31, 46 N. E. 292; Folinsbee v. Sawyer, 157 N. Y. 196, 199, 51 N. E. 994; Petrie v. Trustees Hamilton College, 158 N. Y. 464, 53 N. E. 211. This rule holds especially where to deny it full effect would operate to work an injustice or fraud. Juilliard v. Chaffee, 92 N. Y. 529, 534.

[3] Returning now to the real transaction between the parties it will be seen that the agreement was that plaintiffs should care for, support, and maintain said William H. Showdy during his lifetime upon the farm in question and, as a consideration therefor, should have the use of the place for a series of years. While the paper drawn by defendant was in form a lease, yet the surrounding circumstances, as well as the agreement itself, shows that no such reservation of rental was made as is contemplated by the Constitution. To come within the constitutional provision there must be a reservation of rent or service of some kind. This means a reservation of something issuing out of the land itself in annual payment for such use. Thorn v. De Breteuil, 86 App. Div. 415, 416, 83 N. Y. Supp. 849. The use of lands for a series of years as a consideration alone for the support and maintenance of the owner is not the reservation of rent within the meaning of the Constitution. Stephens v. Reynolds, 6 N. Y. 454; Parsell v. Stryker, 41 N. Y. 480; Massachusetts Nat. Bank v. Shinn, 163 N. Y. 360, 367, 57 N. E. 611.

But it is said that the Constitution also refers of the reservation of services, and that the agreement provided for the performance of personal services by the plaintiffs in caring for the owner of the land. I think the service referred to in the Constitution is what was known as rent service at common law.

By statute passed in the reign of Charles the Second (St. 12 Car. II, c. 24) knight service, which was established at the Norman Conquest, was abolished and all of the lands in the realm were thereafter held in free and common socage. This was a tenure whereby the tenant held the land of the lord of the manor by certain services differing from knight's service. It might be by fealty and a certain rent or fealty and certain corporeal services, such as plowing the lord's lands for a certain number of days. From this rose that rent service which was so known at common law.

Our own statute of quia emptores (Laws 1787, c. 36) excepted from its operation all rent service incident to or belonging to tenure in common socage, and thus estates continued down to the Constitution of 1846, save that tenure in common socage was abolished and all lands within the state declared to be allodial. This, I think, was the service which the Constitution refers to, and it will be seen at once that it possessed precisely the same characteristics as an annual pecuniary rent. It needs no argument to show that if this agreement to maintain and support the owner of the land was not a reservation of rent, it was not a reservation of service within the meaning of the Constitution.

[4] But there is another ground on which I think the rights of the plaintiffs may be sustained. The defendant negotiated the contract for the support of his father during his lifetime, and was thereby relieved from the filial obligation that he owed to his parent. In consideration for such care the defendant agreed that the plaintiffs should have the use of the farm for a series of years and himself drew the lease in question and procured his father to sign it, after which he got a deed of the place from his father, acknowledged before himself as justice of the peace, which, however, was not put on record until after his father's death. The plaintiffs moved upon the place and proceeded

to carry out the agreement they had made. Thereafter and before the death of Showdy they were informed by some one that the lease was invalid, and threatened to leave for that reason, but were assured by defendant that he thought the lease was all right, and if they would stay on the place and fulfill their agreement the lease would be fully carried out. The plaintiffs relied upon this statement and continued upon the premises and, having in good faith executed and carried out the contract that they made, I think equity will now hold the defendant estopped from asserting the invalidity of the same.

[5] The granting of relief by way of estoppel is a familiar branch of equity jurisprudence. An estoppel arises out of the conduct of the parties, and is founded on justice and good conscience, and the es-- sence of its doctrine is that where a person does or omits to do something which influences the action of another, equity will not permit him to controvert the same to the injury of the party who has relied and acted thereon. Erie Co. Sav. Bank v. Roop, 48 N. Y. 298; Maltes v. Frankel, 157 N. Y. 603, 609, 52 N. E. 585, 68 Am. St. Rep. 804; Hollins v. Hubbard, 165 N. Y. 544, 59 N. E. 317; Krantz Mfg. Co. v. Gould Storage Co., 83 App. Div. 135, 82 N. Y. Supp. 474; Dickinson v. Blake, 116 App. Div. 548, 101 N. Y. Supp. 709.

If one is induced to purchase lands by the acts or representations of another designed to influence his conduct and to create a reasonable belief that he was acquiring a good title under which he acts, the party who thus influences him is estopped from setting up title in himself. Trustees v. Smith, 118 N. Y. 634, 641, 23 N. E. 1002, 7 L. R. A. 755.

The inquiry always is whether the party sought to be estopped who has, by his words or actions, influenced the conduct of others so that a wrong would be done, should be permitted to show a state of facts inconsistent with his words and actions. Carpenter v. Stilwell, 11 N. Y. 73.

Where a party receives and retains the whole consideration of a contract he is estopped from asserting the invalidity of the same. Marie v. Garrison, 13 Abb. (N. C.) 309, 310; Ryan v. Dox, 34 N. Y. 318, 319, 90 Am. Dec. 696.

So also it is said that a party may waive a constitutional provision made for his benefit, and when a corporation takes private property for public uses without authority of law, the owner is estopped from asserting such ownership when he has received and retained the compensation therefor without objection. Sherman v. McKeon, 38 N. Y. 266, 274, 275; Weeks-Thorne Paper Co. v. City of Syracuse, 139 App. Div. 854, 124 N. Y. Supp. 317.

And where a party with sufficient notice of his rights does that which amounts to a recognition or adoption of a contract or transaction or acts in a manner inconsistent with its repudiation, and so as to affect or interfere with the relations and situation of the parties, he thereby acquiesces and assents to it, and is equitably estopped from impeaching it, although it was originally void. Rothchild v. Title Guarantee & Trust Co., 204 N. Y. 458, 464, 97 N. E. 879, 41 L. R. A. (N. S.) 740.

The purpose of the constitutional provision was to prevent long leases of lands on the theory that they were detrimental to the inter-

ests of agriculture, as the tenant could not be expected to take the same interest in the upkeep of the property that the owner would, and while the Constitution does not in terms prohibit the making of such leases, it declares that they shall not be valid. Such a lease, however, is in no sense of the word a contract malum in se. The parties may nevertheless elect to treat it as valid, and hence, the doctrine of equitable estoppel is applicable to such a case.

It seems to me, under all the circumstances, that the defendant is equitably estopped from insisting on the invalidity of the lease in question.

[6] The question now arises as to what relief the plaintiffs are entitled to in this action. Manifestly the action cannot be sustained for specific performance because the plaintiffs already have a contract that covers all of their rights and they are already in possession of the property. It will not lie to restrain any interference with the possession of the plaintiffs, as there are no allegations or proofs that such interference is at all threatened by the defendant, nor aside from the statute will the action lie for the purpose of quieting the plaintiffs' title, because at common law the owner of land could not maintain an action against a person who merely made a claim, but in no manner interfered with the owner's possession. Nor would equity grant such relief in the absence of special circumstances of an equitable character outside the title in question. Lewis v. Howe, 174 N. Y. 340, 66 N. E. 975, 1101; Moores v. Townshend, 102 N. Y. 387, 393, 7 N. E. 401; Center v. Weed, 63 Hun, 560, 563, 18 N. Y. Supp. 554; 1 Pom. Eq. (3d Ed.) § 246, 3 Pom. Eq. (3d Ed.) § 1396.

[7] I think, however, the action may be maintained under the statute as one brought to determine the plaintiffs' rights in the property in question, and to quiet their title to the same. It is true that there are many allegations in the complaint and prayer for judgment which are not at all pertinent to an action of this character, but this does not prevent relief being given, provided there is enough stated to give the court jurisdiction under the statute. Doscher v. Wyckoff, 132 App. Div. 139, 116 N. Y. Supp. 389. The essentials to the maintenance of the statutory action are that the plaintiffs should have been in possession of the real estate in question for at least a year, claiming at least a 10-year lease in the same, and that the defendant is making a claim adverse to that of the plaintiffs. Code, § 1638.

[8] It is further provided that the complaint must describe the property, and must set forth facts showing the plaintiffs' rights and the manner in which his title or interest accrued, that the plaintiffs were in possession and had been in such possession for at least a year, and that the defendant unjustly claims such property. Code, § 1639.

I think an analysis of the complaint will show that it contains all of the foregoing essentials. It is true that there is no express allegation that the plaintiffs were in possession when the action was commenced, but I think that is the necessary inference from the facts alleged. The purpose of the requirement was to prevent suits by transient occupants who might go into possession for that purpose only, and therefore I think that allegations from which that fact appears as

a necessary inference is sufficient. Whitman v. City of New York, 85 App. Div. 471, 83 N. Y. Supp. 465; Wiechers v. McCormick, 122 App. Div. 867, 107 N. Y. Supp. 835; Norris v. Hoffman, 133 App. Div. 596, 118 N. Y. Supp. 156; Brown v. Crabb, 156 N. Y. 447, 51 N. E. 306; Gage v. Kaufman, 133 U. S. 471, 10 Sup. Ct. 406, 33 L. Ed. 725.

Especially should this rule hold in a case like the present, where no question seems to have arisen as to the sufficiency of the complaint. Trustees v. Bowman, 136 N. Y. 521, 525, 32 N. E. 987.

The evidence in the case clearly brings it within these provisions of the Code, and the plaintiffs are therefore entitled to a decree adjudging the validity of their lease and foreclosing the defendant from any interference with the same save for such reasons as are set forth in the lease. Doscher v. Wyckoff, 113 N. Y. Supp. 655.

[9] The action is essentially equitable in its nature, and, as the conduct of the defendant is not such as to favorably impress a court of equity, the decree should be with costs against the defendant. King v. Ross, 28 App. Div. 371, 51 N. Y. Supp. 138; Renwick v. Weeden, 135 App. Div. 696, 698, 120 N. Y. Supp. 532.

Findings may be prepared in accordance with this opinion, and, if not assented to by counsel, settled before me on five days' notice.